# Illinois Official Reports

## Appellate Court

---

### *In re Charles W.*, 2014 IL App (1st) 131281

---

| | |
|---|---|
| Appellate Court Caption | *In re* CHARLES W. AND DARIOUS W., Minors (The People of the State of Illinois, Petitioner-Appellee, v. Charles W., Sr., Respondent-Appellant). |
| District & No. | First District, Fifth Division<br>Docket Nos. 1-13-1281, 1-13-1956 cons. |
| Rule 23 Order filed | November 8, 2013 |
| Rule 23 Order withdrawn | January 15, 2014 |
| Opinion filed | February 7, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from a trial court's orders entered in the case of two minors who had been adopted by their paternal grandparents, the orders finding the minors dependent and making them wards of the court were upheld, since the grandmother was deceased at the time of the court proceedings, the grandfather failed to show that he was prejudiced by the alleged ineffective assistance provided by his counsel, there was ample evidence that the grandfather's physical and mental condition did not allow him to provide the necessary care and parenting the minors needed, and the trial court did not manifestly err in finding the minors dependent and making them wards of the court. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 12-JA-583, 12-JA-562; the Hon. John L. Huff, Judge, presiding. |

| Judgment | Affirmed. |
|---|---|
| Counsel on Appeal | Elizabeth Butler, of Northbrook, for appellant. |
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Nancy Kisicki, and Nicole Lucero, Assistant State's Attorneys, of counsel), for the People. |
| | Robert F. Harris, Public Guardian, of Chicago (Kass Plain and Christopher Williams, of counsel), guardian *ad litem*, for appellee Charles W. |
| | Robert F. Harris, Public Guardian, of Chicago (Charles P. Golbert and Janet L. Barnes, of counsel), guardian *ad litem*, for appellee Darious W. |
| Panel | JUSTICE PALMER delivered the judgment of the court, with opinion. Justices McBride and Taylor concurred in the judgment and opinion. |

**OPINION**

¶ 1    Respondent, Charles W., Sr., is the adoptive father of minors Charles W. (Charles) and Darious W. Respondent appeals the trial court's March 19, 2013, adjudication orders finding Charles and Darious dependent pursuant to section 2-4(1)(b) of the Juvenile Court Act of 1987 (the Act) (705 ILCS 405/1-1 *et seq*. (West 2010)). Respondent also appeals the trial court's March 19, 2013, and May 23, 2013, dispositional orders making Charles and Darious, respectively, wards of the court.

¶ 2                                    I. BACKGROUND
¶ 3    Charles, who was born on February 12, 1998, and his brother Darious, who was born on January 11, 2000, were adopted by their paternal grandparents, Rose Mary W. and respondent. Rose Mary W. died in 2008. Respondent was approximately 79 years of age at the time of the instant proceedings. In May 2012, Darious came to the attention of the

- 2 -

Department of Children and Family Services (DCFS) when Darious reported that his aunt, who was also respondent's daughter, Brenda Foreman, had physically abused him and failed to obtain treatment for his asthma. DCFS child protection investigator Eleanor Powell was assigned to the case. Upon further investigation, Powell learned that respondent was admitted to Kindred Hospital in May of 2012 and had been diagnosed with several diseases, Foreman was caring for Darious, and Charles was living in a residential treatment facility. Powell determined that it was necessary to take protective custody of Darious and Charles.

¶ 4 On May 24, 2012, the State filed a petition for adjudication of wardship regarding Darious. In an amended petition, the State alleged that Darious was dependent pursuant to 2-4(1)(b) (705 ILCS 405/2-4(1)(b) (West 2010)) because he was "without proper care because of the physical or mental disability of his parent, guardian or custodian." The petition alleged that Darious was taken into protective custody on May 22, 2012. It further alleged:

> "Mother is deceased. Father has been diagnosed with alzheimer [*sic*], dementia, cancer, seizure disorder, pneumonia and pulmonary edema. Father currently resides in a rehabilitation center. Per medical personnel father is unable to parent due to his medical condition. There are no other family members willing and/or able to care for this minor."

¶ 5 In an affidavit accompanying the petition, Powell averred that Darious was brought to the attention of the DCFS because Darious:

> "HAS BRUISES FROM FALLING and being stabbed with a knife by the caretaker who is the adopted parent['s] daughter. Minor has asthma and the caretaker did not take the minor to the doctor for treatment. Adopted mother is deceased. The adopted father is in the hospital and according to the doctor will never be able to parent again."

¶ 6 On May 31, 2012, the State also filed a petition for adjudication of wardship regarding Charles, alleging that Charles was also dependent and setting forth the same allegations as in Darious's petition.

¶ 7 An attorney was appointed to represent respondent, and the trial court entered orders authorizing the release of medical records pertaining to respondent, Charles, and Darious. Records were requested regarding Charles from Northern Illinois Academy, Hartgrove Hospital, and Maryville Scott Nolan Psychiatric Hospital, and from Kindred Hospital for respondent.

¶ 8                                          A. Adjudication Hearing

¶ 9 On March 19, 2013, the court held an adjudication hearing regarding both Darious and Charles.

¶ 10 Powell testified that she was assigned the minors' case in May 2012. As part of her investigation, she went to Kendall Hospital on May 23, 2012, in order to speak with respondent, but she was unable to do so "[b]ecause he was laying [*sic*] in the bed. He was not responding to nothing [*sic*]. He was just out of it. His eyes were closed. He wasn't saying

nothing [*sic*]. He was out of it." He did not respond to any of her questions. Powell asked respondent's doctor about respondent's ability to parent the minors, and he informed Powell that "because of [respondent's] mental and physical state that he would never be able to parent."

¶ 11     Powell also testified that in her investigation, she was unable to identify any family members who would be able to care for the minors. Their adoptive mother was deceased. Powell testified that she asked Foreman about other possible family members who could care for them, but Foreman indicated that there were none. Powell therefore took protective custody of Charles and Darious because "they were living with the aunt. The aunt was abusing them and the–they needed a caregiver and the father was not able to parent and there was no one else. So I was informed by my supervisor to take custody of both boys."

¶ 12     On cross-examination by Charles's assistant public guardian, Powell testified that at the time the petition was filed in May 2012, Charles was living in a residential home, Northern Illinois Academy, and he had been placed there by Foreman. Powell spoke with Charles's teacher, who informed her that he was at Northern Illinois Academy because "he was talking to himself at night and he needed to be placed in there."

¶ 13     Powell testified that she called Charles at the academy on May 30, 2012, and he told her that Foreman had cut his brother with a knife. He also told her that he did not want to return to live with Foreman because her godson would sometimes beat him and that he had run away in the past. Powell testified that Charles told her that his aunt treated him and Darious "like slaves." Powell testified that she informed Charles that he would not be returning to Foreman's home, and he stated that this "was a good thing."

¶ 14     On cross-examination by Darious's assistant public guardian, Powell testified that Darious was residing with Foreman at the time Powell took protective custody. Powell testified that Foreman had been "indicated" by the DCFS for cuts, welts, and bruises inflicted on Darious, and therefore Foreman could no longer care for him. Powell also testified that Darious expressed his desire not to live with Foreman and indicated that he was afraid of her.

¶ 15     The State admitted into evidence, without objection, the certified death certificate of the minors' adoptive mother and respondent's medical records from Kindred Hospital. The State reviewed some of respondent's medical records in court.

> "Patient has a past medical history of hypertension, Alzheimer's, dementia, dyslipidemia, ***, cancer of the prostate, pulmonary embolism, status: Post IVC filer placement, and seizure disorder. A little further down on the same page, Review of Systems: Unobtainable. Patient being demented and lethargic. *** Where it says subjective under progress note from May 19th: The patient is alert, up in chair, but is nonverbal. *** Progress note from May 21, 2012. It says impression: One: Respiratory failure on nasal cannula, c-a-n-n-u-l-a. Two: Altered mental status still at [*sic*] aspiration risk. *** On the very bottom of the page is the progress note from June 4, 2012. It says plan: Full ventilator support and bronchodilators ***. Patient is ventilator dependent so far. Finally, from Page 36. *** History of Present Illness: The patient is a 79-year-old gentlem[a]n who presented to Trinity Hospital with fever, nausea, and vomiting. The patient has known history of Alzheimer's disease, history

of *** seizures. He was hypotensive, admitted to intensive care unit. Chest shows pulmonary edema and *** bilateral pneumonia. He was treated with the combination of broad spectrum antibiotics. He has now been transferred to Kindred Lakeshore campus."

¶ 16    The State argued that it had shown that the minors were dependent because they were without proper care due to the death of their adoptive mother and respondent's physical and mental disabilities. Respondent's counsel argued that the State had not met its burden of proof.

¶ 17    The court held that, pursuant to section 2-4(1)(b) of the Act, dependency had been established and that "both minors are without proper care because of the disability of the father. He is suffering from Alzheimer's and is, for all intensive [*sic*] purposes, *non compos mentis*, and the mother is deceased. I find that both boys are dependent." The court entered two adjudication orders to that effect.

## B. Charles's Dispositional Hearing

¶ 19    The court proceeded immediately to the dispositional hearing for Charles. The court took judicial notice of the testimony and evidence from the adjudicatory hearing. The State admitted into evidence a quarterly progress summary from the Lydia Home Association from February 24, 2013, and the DCFS service plan for both minors.

¶ 20    Ronald Haynes, the case manager at Lydia Home for Charles, testified that Charles had been in the placement since July 2012, and it was safe and appropriate for Charles. Haynes reported that there was one incident in January 2013 when Charles misbehaved, but the incident was addressed in therapy. Haynes also reported that in February 2013, a misunderstanding occurred at school and Charles locked himself in the bathroom and talked about hanging himself. He was hospitalized for 10 days. Haynes indicated that Charles was given Tenex and Prozac and the Tenex had stabilized him since the hospitalization. Haynes testified that Charles received weekly individual therapy, weekly group therapy, and recreational therapy. His individual therapist reported that Charles had made "marginal progress" and his suicidal thoughts were being addressed. Haynes opined that Charles was still in need of the services that the residential placement could provide.

¶ 21    Haynes testified that Charles visited Darious twice a month and the visits were going well. Charles also visited respondent, although there were concerns regarding how Charles "would react after seeing his father in the condition that he's in." Charles's therapist was addressing this. Haynes indicated that Charles felt sad regarding respondent's deteriorating health and Haynes believed it was in Charles's best interests to continue visiting respondent. Haynes testified that in the summer of 2012, Charles was arrested for stealing a phone. He was criminally charged, but the case was dismissed after he paid restitution and performed community service hours.

¶ 22    Annette Patterson, Charles's case manager from DCFS, testified that Charles's visits with respondent had been safe and appropriate, they had a strong bond, and she would try to accommodate more visits. There were no other services that respondent could participate in

because of his medical condition. Patterson indicated that respondent was no longer living at Kindred; he now resided in Foreman's home and received ongoing medical care in the home. Patterson recommended that Charles be made a ward of the court as it was in his best interests, he was in need of ongoing services, and he did not have a parent who could provide them.

¶ 23     The court held that the evidence established that the adoptive mother was deceased and respondent, "due to his Alzheimer's and dementia resulting from Alzheimer's[,] is unable to care for, protect, train or discipline Charles," and that reasonable efforts could not be made for reunification because services for respondent were "not feasible under the circumstances." The court held that it was in the best interest of Charles to make him a ward of the court and it appointed DCFS Guardianship Administrator D. Jean Ortega-Piron as guardian. The parties then proceeded directly to a permanency hearing, and the court held that it was in Charles's best interests to "set the goal at independence."

¶ 24                                    C. Darious's Dispositional Hearing

¶ 25     On May 23, 2013, the court held a dispositional hearing regarding Darious and took judicial notice of the evidence presented at the March 19, 2013, adjudicatory hearing.

¶ 26     Patterson testified that Darious had been in a traditional foster home for approximately two months, the placement was safe and appropriate, and he was doing better in a foster home. Patterson indicated that Darious needed individual counseling, which he received weekly. He was also referred for a psychological assessment because of conflicting diagnoses of bipolar disorder and oppositional defiant disorder. Patterson testified that Darious had asthma and used an asthma pump as needed.

¶ 27     Patterson testified that Darious visited Charles and respondent twice a month each, and Darious had a "[v]ery close" relationship with Charles and shared a bond with respondent. Patterson testified that respondent had been assessed for DCFS services, but none were recommended because of his dementia and he was "mentally unable to participate in services." Patterson indicated that Darious's adoptive mother was deceased and respondent had prostate cancer, was "wheelchair-bound," and received care in his home. Patterson recommended that Darious be made a ward of the court.

¶ 28     The court held that the evidence established that the adoptive mother was deceased and respondent was "unable by virtue of his serious physical as well as–physical illnesses as well as dementia, he's unable to care for, protect, train and discipline" Darious. The court held that reasonable efforts could not be made to reunify them due to respondent's mental and physical condition, and it was in Darious's best interests to become a ward of the court. The court entered an order to that effect and placed Darious in the custody of the DCFS Guardianship Administrator. The parties then proceeded to the permanency hearing, where the court held that Darious would be placed in continuing substitute foster care.

¶ 29     Respondent filed a notice of appeal from the March 19, 2013, and May 23, 2013, adjudication and dispositional orders.

¶ 30                                    II. ANALYSIS

¶ 31                          A. Ineffective Assistance of Counsel

¶ 32        On appeal, respondent raises numerous claims of ineffective assistance of counsel. Although there is no constitutional right to counsel in proceedings pursuant to the Act, a statutory right is granted under the Act. *In re S.G.*, 347 Ill. App. 3d 476, 478-79 (2004). "Illinois courts apply the standard utilized in criminal cases to gauge the effectiveness of counsel in juvenile proceedings." *Id.* at 479 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). "Generally, in order to establish ineffective assistance of counsel, one must show both that counsel's representation fell below an objective standard of reasonableness and that a reasonable probability exists that, but for the error, the result would have been different." *Id.* The prejudice prong requires a reasonable probability, not just a mere possibility, of a different outcome. *In re K.O.*, 336 Ill. App. 3d 98, 111 (2002). Counsel's conduct is presumed to be the product of sound trial strategy, and respondent bears the burden of overcoming this presumption. *People v. Simms*, 192 Ill. 2d 348, 361 (2000).

¶ 33        Respondent must satisfy both prongs of the *Strickland* test in order to prevail on a claim of ineffective assistance of counsel. *In re K.O.*, 336 Ill. App. 3d at 111. However, "[i]f the ineffectiveness claim can be disposed of because defendant did not suffer sufficient prejudice, a court need not consider whether counsel's performance was deficient." *Id.* (citing *Strickland*, 466 U.S. at 697). "If it is easier to dispose of an ineffective assistance claim on the ground that it lacks sufficient prejudice, then a court may proceed directly to the second prong and need not determine whether counsel's performance was deficient." *People v. Givens*, 237 Ill. 2d 311, 331 (2010).

¶ 34        Respondent argues that counsel failed to object to the admission of hearsay evidence during the adjudicatory hearing. Respondent asserts that hearsay was improperly admitted when Powell testified that respondent's doctor told her that respondent would never be able to parent. Respondent further claims that Powell also improperly testified that, during her investigation, she called Charles while he was at Northern Illinois Academy, and Charles told her that Foreman cut Darious with a knife and treated them like slaves and her godson would beat Charles up.

¶ 35        The Illinois Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ill. R. Evid. 801(c) (eff. Jan. 1, 2011). Hearsay is inadmissible unless otherwise allowed by other rule or statute. Ill. R. Evid. 802 (eff. Jan. 1, 2011). However, "testimony about an out-of-court statement which is used for a purpose other than to prove the truth of the matter asserted in the statement is not 'hearsay.' " *People v. Williams*, 181 Ill. 2d 297, 313 (1998).

¶ 36        During direct examination by the State, Powell testified that, in her capacity as the DCFS investigator for the minors' case, she attempted to speak with respondent when he was hospitalized at Kendall Hospital on May 23, 2012, but respondent was "out of it" and unresponsive. Powell testified that she then spoke with respondent's doctor at the hospital:

            "Q. [Assistant State's Attorney:] What did he say to you?

- 7 -

A. [Powell:] He told me because of [respondent's] mental and physical state that he would never be able to parent.

Q. During the course of your investigation, were you able to identify any family members that would be able to take Charles and Darious into their care?

A. No.

Q. Did you attempt to locate family members?

A. Yes, I did.

Q. Where was the adoptive mother during the course of your investigation?

A. She was deceased.

Q. Did you take protective custody of Charles and Darious Washington?

A. Yes, I did.

Q. Why did you take protective custody?

A. Because they were living with the aunt. The aunt was abusing them and the–they needed a caregiver and the father was not able to parent and there was no one else. So I was informed by my supervisor to take custody of both boys."

¶ 37   As noted above, when a party cannot establish prejudice under *Strickland*, we may dispose of an ineffective assistance of counsel claim on this basis and need not consider whether counsel's performance was deficient. *In re K.O.*, 336 Ill. App. 3d at 111; *Givens*, 237 Ill. 2d at 331. We conclude that respondent has not shown that he suffered sufficient prejudice such that there was a reasonable probability that the result of the hearing would have been different. *In re K.O.*, 336 Ill. App. 3d at 111. Moreover, when a trial court sits without a jury, "we presume that the trial court relied only upon competent evidence in making its determination." *In re D.L.*, 226 Ill. App. 3d 177, 188 (1992). Disregarding the evidence that respondent claims constituted inadmissible hearsay and considering the remaining evidence adduced at the adjudicatory hearing, we find that it established that the minors were "dependent" because they were "without proper care because of the physical or mental disability of [their] parent." 705 ILCS 405/2-4(1)(b) (West 2010). First, Powell's testimony regarding her personal observations of the respondent during her visit at the hospital demonstrated respondent's debilitated mental and physical condition. In addition, the circumstances in which she found the minors, that is, left in the care of others, also showed that respondent was unable to care for them. And lastly, the medical records also provided evidence of the numerous mental and physical diseases from which respondent suffered, in addition to his condition at the time the DCFS took custody of the minors and the State petitioned for a finding of dependency.

¶ 38   Although not necessary to our resolution of respondent's claim on appeal, we nevertheless note that the challenged evidence did not constitute inadmissible hearsay. Powell's testimony regarding the doctor's statement was admissible to show the course of Powell's investigation and how she initially came to the decision to take protective custody of the minors and determine whether any family member was available to care for the minors. *Williams*, 181 Ill. 2d at 313. Moreover, counsel's decision not to object at trial was presumptively a matter of sound trial strategy, which we afford great deference. *People v.*

*Theis*, 2011 IL App (2d) 091080, ¶ 40 ("A defense counsel's decision not to object to the admission of purported hearsay testimony involves a matter of trial strategy and, typically, will not support a claim of ineffective assistance of counsel.").

¶ 39        Additionally, Charles's statements to Powell fell within the hearsay exception set forth in section 2-18(4)(c) of the Act, which provides:

> "(c) Previous statements made by the minor relating to any allegations of abuse or neglect shall be admissible in evidence. However, no such statement, if uncorroborated and not subject to cross-examination, shall be sufficient in itself to support a finding of abuse or neglect." 705 ILCS 405/2-18(4)(c) (West 2010).

¶ 40        Respondent argues that the language, "any allegations of abuse or neglect," limits the application of this provision to proceedings based only on abuse or neglect, and not dependency. When interpreting the language of a statute, we "must look to the specific wording of the statute and evaluate the wording in its entirety, considering each section in connection with other sections." *In re Marriage of Rudd*, 293 Ill. App. 3d 367, 372 (1997).

¶ 41        We conclude that the language of this statute does not describe the type of the proceeding, but rather the type of accusation made by the minor. The terms of the statute do not limit the admission of this evidence to proceedings based only on neglect or abuse. In fact, subsection (1) specifically directs that "[a]t the adjudicatory hearing, the court shall first consider only the question whether the minor is *abused, neglected or dependent*." (Emphasis added.) 705 ILCS 405/2-18(1) (West 2010). This provision makes clear that the section as a whole deals with any adjudicatory hearing, whether based on neglect, abuse, or dependency. Further, subsection (4)(a), which deals with the admissibility of medical records, provides that such records "relating to a minor in an abuse, neglect or dependency proceeding" may be admitted into evidence. 705 ILCS 405/2-18(4)(a) (West 2010). Other provisions within section 2-18 repeatedly refer to "*any* hearing under this Act," without excluding dependency hearings. (Emphasis added.) See 705 ILCS 405/2-18(2), (3), (5), (6) (West 2010). Our interpretation also supports the purpose of the Act, which is "to secure for each minor subject thereto the care and guidance which will best serve the minor's safety and moral, emotional, mental and physical welfare, and the best interests of the community." *In re Austin W.*, 214 Ill. 2d 31, 43 (2005).

¶ 42        Based on this analysis, Powell's testimony concerning Charles's statements about abuse fell within the exception set forth in subsection 2-18(4)(c). Because this evidence was admissible, respondent's counsel did not err when he did not object to its admission. Counsel cannot be found ineffective for failing to raise a meritless issue. *Givens*, 237 Ill. 2d at 331.[1]

¶ 43        Respondent also raises several other claims of ineffective assistance of counsel related to the abuse allegations. Respondent argues that his counsel should have objected to the

---

[1]We note that respondent does not argue on appeal that counsel was ineffective for failing to object to the admission of Powell's testimony concerning Darious's statements regarding abuse by Foreman. As such, this issue has been waived on appeal. *In re Parentage of Janssen*, 292 Ill. App. 3d 219, 221 (1997) (a party waives an issue if he or she fails to raise it on appeal); Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008).

relevancy of Powell's testimony that the minors were abused by Foreman because the petitions for the minors alleged only dependency, not abuse. Respondent further asserts that counsel failed to demand that Darious testify regarding the abuse allegations and failed to cross-examine Powell regarding the credibility of Darious's allegations. Lastly, respondent argues that counsel should have cross-examined Powell regarding Charles's history of mental illness as set forth in Charles's medical records because the records did not contain allegations of abuse.

¶ 44    Similar to respondent's ineffective assistance claims concerning hearsay, we again conclude that respondent has not shown that he suffered sufficient prejudice, *i.e.*, a reasonable probability that the result of the proceedings would have been different, with respect to these claims. *In re K.O.*, 336 Ill. App. 3d at 111; *Givens*, 237 Ill. 2d at 331. Further, decisions regarding whether to call a particular witness to testify or to cross-examine a witness are relegated to matters of trial strategy, which will ordinarily not support a claim of ineffective assistance of counsel. *People v. Pecoraro*, 175 Ill. 2d 294, 326 (1997); *People v. Patterson*, 217 Ill. 2d 407, 442 (2005). In addition, proceedings under the Act constitute civil proceedings, which means that respondent had no sixth amendment right to confront witnesses, such as Darious. *In re Ch. W.*, 408 Ill. App. 3d 541, 550 (2011). Respondent also fails to suggest what questions counsel should have posed, what new or damaging information would have been revealed, and how this would have helped his case. It is just as likely that such inquiries would have resulted in even more damaging testimony.

¶ 45    Respondent next urges that counsel failed to cross-examine Powell regarding her observations of respondent at the hospital because his medical records indicate that he was "alert and resting comfortably" on the date of her interview. Again, whether to pursue a particular line of cross-examination is a matter of trial strategy. *Pecoraro*, 175 Ill. 2d at 326. The evidence supported that respondent suffered from a litany of medical conditions, including Alzheimer's, and that he was "demented," "lethargic," and "nonverbal." Although respondent claims that his medical records indicate that he was alert on the day of Powell's visit, it is possible that Powell visited at a different time of day than when the doctor assessed respondent. Considering the other testimony and evidence, it is also possible that cross-examination of Powell regarding her observations of respondent would have only introduced more damaging testimony. Thus, respondent has failed to establish that he suffered any prejudice. *In re S.G.*, 347 Ill. App. 3d at 479; *In re K.O.*, 336 Ill. App. 3d at 111.

¶ 46    Respondent also contends that counsel should have presented evidence regarding the fact that Charles received an "Individualized Care Grant" in order to reside at the Northern Illinois Academy because the receipt of this grant required "full parental involvement" and thus would have demonstrated that respondent was able to obtain the grant for Charles and properly meet his needs. However, Powell testified that Charles had been placed at the Northern Illinois Academy by "[h]is adoptive aunt." Accordingly, counsel did not render deficient representation in not introducing evidence regarding the grant because the record supports that Charles's aunt was responsible for his admission, not respondent. *In re S.G.*, 347 Ill. App. 3d at 479. Also, we do not believe that this evidence would have made a

difference in the outcome of the proceedings in light of the other evidence regarding respondent's condition. *In re K.O.*, 336 Ill. App. 3d at 111.

¶ 47     In his final claim, respondent argues that counsel was ineffective because he did not present a closing argument. We observe that proceedings pursuant to the Act are not intended to be adversarial in nature; rather, the focus is the best interests of the minor. *In re D.L.*, 226 Ill. App. 3d at 185. Further, counsel did in fact present a closing argument, although it was brief. [2] Under the circumstances, respondent has failed to establish that counsel's performance was deficient or that he suffered sufficient prejudice. *In re K.O.*, 336 Ill. App. 3d at 111; *Givens*, 237 Ill. 2d at 331.

¶ 48                              B. Adjudicatory Finding of Dependency

¶ 49     Respondent also challenges on appeal the trial court's finding that the minors were dependent pursuant to the Act.

> "Dependency need only be established by a preponderance of the evidence. [Citation.] A trial court's determination regarding dependency will not be overturned unless it is manifestly erroneous. [Citation.] A trial court's judgment is not manifestly erroneous merely because the reviewing court might have ruled otherwise. Rather, a judgment is against the manifest weight of the evidence if it is clearly evident a conclusion opposite to that reached by the trial court was the proper disposition. [Citation.]" *In re J.J.*, 246 Ill. App. 3d 143, 151 (1993).

¶ 50     As stated, pursuant to subsection 2-4(1)(b) of the Act, a minor is dependent if he "is without proper care because of the physical or mental disability of his parent, guardian or custodian." 705 ILCS 405/2-4(1)(b) (West 2010). In making this determination, the focus is "on the parent rather than the child." *In re J.J.*, 246 Ill. App. 3d at 151.

> "Specifically the focus is on whether the disability of the parent is such that it impairs the abilities necessary for the care and parenting of the minor. *** [T]he scope and extent of the disability may be determined from other evidence, including *** observations of the parent in other contexts, and medical or other evidence regarding the parent's limitation due to the disability." *In re J.J.*, 246 Ill. App. 3d at 151.

¶ 51     In the present case, ample evidence demonstrated that respondent's condition significantly impaired his ability to provide the necessary care and parenting of the minors. Powell's testimony revealed that respondent was unresponsive and "out of it" when she visited him. The evidence indicated that respondent suffered from Alzheimer's and dementia, in addition to numerous other medical problems affecting his physical health, such as being ventilator dependent, and having a seizure disorder, hypertension, and prostate cancer. The minors' adoptive mother was deceased, and Powell could not find any other family members capable of caring for the minors. Respondent's inability to care for the minors essentially left them in the care of Foreman, against whom there were several allegations of abuse. Based on

---

[2]Counsel argued, "we'd simply submit that the State hasn't met its burden of proof and ask that the petitions be dismissed."

the foregoing, the trial court's conclusion that respondent was "suffering from Alzheimer's, and is \*\*\* *non compos mentis*, and the mother is deceased" was not manifestly erroneous. *In re J.J.*, 246 Ill. App. 3d at 151.

¶ 52 Respondent argues that his medical records were inherently unreliable because they were not properly certified and delegated pursuant to subsection 2-18(4)(a) of the Act and should not have been admitted into evidence. We hold that respondent has waived any contention on appeal that his medical records were inadmissible. At the adjudicatory hearing, respondent's counsel indicated that he had no objection to the admission of the records. Thus, respondent waived any argument as to their inadmissibility on appeal by failing to object in the trial court. *In re Jaber W.*, 344 Ill. App. 3d 250, 256 (2003) (citing *Jones v. Chicago Osteopathic Hospital*, 316 Ill. App. 3d 1121, 1132 (2000)).

¶ 53 Nevertheless, even if we were to consider respondent's argument, we would still decline to overturn the trial court's decision on this basis. "Section 2-18(4)(a) of the Juvenile Court Act provides that hospital or agency records made as to occurrences or events relating to a minor in a neglect[, abuse, or dependency] proceeding shall be admissible into evidence as proof of those occurrences or events if the document was made in the regular course of the hospital's or agency's business." *In re Jamarqon C.*, 338 Ill. App. 3d 639, 650 (2003) (citing 705 ILCS 405/2-18(4)(a) (West 2000)). Subsection 2-18(4)(a) further provides:

> "A certification by the head or responsible employee of the hospital or agency that the writing, record, photograph or x-ray is the full and complete record of the condition \*\*\* and that it satisfies the conditions of this paragraph shall be prima facie evidence of the facts contained in such certification. A certification by someone other than the head of the hospital or agency shall be accompanied by a photocopy of a delegation of authority signed by both the head of the hospital or agency and by such other employee. All other circumstances of the making of the memorandum, record, photograph or x-ray, including lack of personal knowledge of the maker, may be proved to affect the weight to be accorded such evidence, but shall not affect its admissibility." 705 ILCS 405/2-18(4)(a) (West 2010).

¶ 54 Respondent argues that the certification of records and the delegation of authority forms were both signed by "Rembay Hubbard," but the delegation of authority should have been signed by the head of the hospital instead.[3] It appears that, pursuant to subsection 2-18(4)(a), the delegation of authority form should have been signed by the head of the hospital instead of Hubbard, who appears to hold the position of "Health Information Management." However, respondent does not assert that the records were not authentic, incomplete, or altered. Respondent does not suggest that his medical records were otherwise not made as a record in the ordinary course of business around the time of the medical professionals'

---

[3]The "certification of records" form in his records contained the somewhat illegible signature of "Rembay Hubbard" or "Kimberly Hubbard," who indicated that her title and position was "Health Information Management." The "delegation of authority to execute certification of records" form in his records was also signed by Hubbard. Over 400 pages of respondent's medical records accompanied these documents.

- 12 -

observations and treatment of respondent in the hospital. *In re A.B.*, 308 Ill. App. 3d 227, 235-36 (1999). Respondent's argument that a possibly incorrect signature rendered his medical records "unreliable" is unconvincing, particularly when respondent failed to raise this objection in the trial court, where it could have been easily remedied. We note that respondent argues for the first time in his reply brief that his counsel rendered ineffective assistance by failing to object to the admission of his medical records. An argument raised for the first time on appeal in the reply brief need not be addressed by this court. "[A]n appellant's arguments must be made in the appellant's opening brief and cannot be raised for the first time in the appellate court by a reply brief." *In re Marriage of Winter*, 2013 IL App (1st) 112836, ¶ 29 (citing Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008) ("Points not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.")). Again, as this minor defect could have been easily remedied in the trial court by a timely objection, we find that respondent suffered no prejudice by counsel's failure to object.

¶ 55                                  C. Dispositional Finding

¶ 56      In his final claim on appeal, respondent contends that, because the trial court manifestly erred in finding the minors dependent, the trial court likewise erred in making the minors wards of the court. See 705 ILCS 405/2-22(1) (West 2010). "A minor may be made a ward of the court if the court determines that the parents are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor. 705 ILCS 405/2-27(1) (West 20[10])." *In re D.W.*, 386 Ill. App. 3d 124, 139 (2008). The trial court's decision must be supported by the preponderance of the evidence, and we will not disturb a dispositional finding on appeal unless it is against the manifest weight of the evidence. *Id.*

¶ 57      Because we have concluded that the trial court did not err in finding the minors dependent, we similarly reject respondent's challenge to the trial court's dispositional finding. In ruling, we also consider that trial courts are given wide latitude with respect to admitting evidence in dispositional hearings. See *In re Jay. H.*, 395 Ill. App. 3d 1063, 1069 (2009) (" 'Although hearsay and other types of incompetent evidence may not be admissible at the adjudicatory hearing, they are admissible at the dispositional hearing.' " (quoting *In re D.L.*, 226 Ill. App. 3d 177, 187 (1992))).

¶ 58                                    III. CONCLUSION

¶ 59      For the reasons stated, we affirm the trial court's adjudicatory and dispositional orders as to Charles and Darious.

¶ 60      Affirmed.

- 13 -