**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240031-U

Order filed October 30, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| *In re* ESTATE OF HERMAN J. FRITZ | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| | ) | Will County, Illinois, |
| | ) | |
| | ) | Appeal No. 3-24-0031 |
| | ) | Circuit No. 15-P-540 |
| | ) | |
| (Vincent Fazio and Natale Fazio, Petitioners- | ) | Honorable |
| Appellants, v. Kristi Hartz, Respondent- | ) | Matthew G. Bertani |
| Appellee). | ) | Judge, Presiding. |

_____

JUSTICE DAVENPORT delivered the judgment of the court.
Presiding Justice Brennan and Justice Peterson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:    The circuit court properly ordered successor cotrustees to convey to respondent an undivided one-half interest in a farm pursuant to a settlement agreement reached in a separate action. Affirmed.

¶ 2    This appeal involves a dispute between petitioners, Vincent Fazio and Natale Fazio, and respondent, Kristi Hartz, over an undivided one-half interest in six parcels of farmland in Plainfield (the Plainfield farm), which was held in a revocable trust (Trust). The circuit court determined

Hartz was entitled to the undivided one-half interest and ordered the successor cotrustees to deliver a deed accordingly.

¶ 3 The Fazios appeal. We affirm.

¶ 4 I. BACKGROUND

¶ 5 A. The Plainfield Farm

¶ 6 The Plainfield farm consists of six parcels, totaling approximately 229 acres. Decedent, Herman J. Fritz, and his sister, Melitha Kramer (Melitha), each owned undivided one-half interests in the Plainfield farm. By 2011, however, Herman's interest was held by the Trust and Melitha's interest was held by Kramer Properties, LLC.

¶ 7 B. Herman's Trust and Will

¶ 8 Herman created the Trust in 1992. He restated and amended the Trust in October 2010.[1] Herman named himself the trustee and the Trust's lifetime beneficiary, and he reserved the right to amend and revoke the Trust. He named as his successor cotrustees Hartz (his niece and Melitha's daughter) and First Midwest Bank, who was later succeeded in interest by Old National Bank (ONB). Herman conveyed to the Trust, among other assets, his undivided one-half interest in the Plainfield farm, in two separate conveyances: in 1993, he deeded to the Trust an undivided one-third interest and, in 2000, he deeded his remaining undivided one-sixth interest. (One-third plus one-sixth equals one-half.)

¶ 9 Article 7(C) of the Trust governed the disposition of the Trust's undivided one-half interest in the Plainfield farm upon Herman's death:

"C. I give [Hartz] my undivided one-half interest in the following real estate:

---

[1]Herman again amended the Trust in 2013, but that amendment did not affect the provisions that are relevant to this appeal.

\*\*\*

(2) Approximately 229 acres, more or less, located in Plainfield Township, Will County, Illinois \*\*\*.

Upon the death of [Hartz], or upon my death if she does not survive me, I give such real estate to Vincent Fazio and Natale Fazio, or if one of them does not survive me, to the survivor of them."

¶ 10 Under Article 11.13 of the Trust, the trustee was given the power "[t]o litigate, compromise, settle, or abandon any claim or demand in favor of or against the trust."

¶ 11 In October 2010, Herman executed a pour-over will, gifting his residuary estate to the Trust upon his death. He appointed Hartz as the executor of his estate.

¶ 12 C. The Action to Partition the Plainfield Farm

¶ 13 In 2011, Kramer Properties, LLC, sought a partition of the Plainfield farm and an accounting.[2] The complaint named Herman as a defendant both in his individual capacity and in his capacity as trustee. Exhibit A to the amended complaint included a legal description of the property Kramer Properties sought to partition. The legal description identified the property at issue as "an undivided two-twelfths interest" in the Plainfield farm. The case was docketed as Will County case No. 11-CH-5287. We will refer to this action as the chancery case.

¶ 14 After a January 2014 pretrial settlement conference, Kramer Properties and Herman reached an oral settlement agreement. In May 2014, Kramer Properties moved to enforce the settlement, alleging Herman had refused to execute a written settlement agreement and comply with most of the settlement terms. In July 2014, the court held a pretrial conference on the motion

---

[2]The complaint was initially brought by both Melitha and Kramer Properties, LLC, but the complaint was later amended to remove Melitha as a plaintiff.

3

to enforce and, at its conclusion, entered an order that attached a proposed order that memorialized the settlement's terms. The order directed both parties to appear on August 13, 2014, and warned that if Herman failed to appear, the proposed order would "be entered as the court's order on the motion to enforce." In addition, the order stated that if either party appeared and contested the proposed order's entry, "an evidentiary hearing w[ould] be held *** as to whether the order shall be entered."

¶ 15 Herman did not appear on August 13, 2014. According to the court's order from that date, Herman had "previously advised the court that he does not desire to be in court further." Thus, the court entered the proposed order that was attached to its July 2014 order. The order stated, in pertinent part, that "[t]he real property legally described on Exhibit 'A' to the complaint, shall, upon the passing of Herman Fritz, be irrevocably given to [Hartz], and Herman Fritz, individually and as Trustee [of the Trust] shall indemnify and hold said legatee harmless from any claims for federal estate taxes therein." In addition, the order stated, "the Court will retain jurisdiction for the purpose of enforcing the terms of the settlement agreement." The court's docket entry from that date stated, "Case dismissed pursuant to settlement agreement."[3] We will refer to the court's August 2014 order as the settlement order.

¶ 16                    D. Herman's Will is Admitted to Probate

¶ 17 Herman died on July 10, 2015. Per the Trust's terms, Hartz and First Midwest Bank succeeded Herman as cotrustees of the Trust. See 760 ILCS 3/704(a)(5) (West 2020) (a trustee's death results in a trusteeship vacancy); *id.* § 704(c)(1) (first priority to fill a trusteeship vacancy

---

[3]We may take judicial notice of the docket entry. See *Asher Farm Limited Partnership v. Wolsfeld*, 2022 IL App (2d) 220072, ¶¶ 31-32 (*sua sponte* taking judicial notice of the circuit court clerk's online records).

belongs to the successor trustee named in a trust); see also *id.* § 1506(1) (the Trust Code applies to "all trusts created before, on, or after its effective date").

¶ 18    On July 22, 2015, Hartz petitioned to probate Herman's will. On July 23, Melitha filed an appearance as "Heir, Creditor, and Interested Party." The court granted Hartz's petition, admitted the will to probate, and issued letters of office to Hartz. Notice of the estate's opening was published on August 6, August 13, and August 20, 2015. The notice stated that any claims against the estate were due on or before February 6, 2016. No claims notices were mailed or delivered in accordance with section 18-3(a) of the Probate Act (755 ILCS 5/18-3(a) (West 2014)).

¶ 19        E. Kramer's Motion to Amend the August 2014 Judgment

¶ 20    In March 2016, Melitha and Kramer Properties filed a motion in the chancery case, asking the court to amend the settlement order by removing the reference to the "undivided two-twelfths interest" from the legal description attached to the complaint. Noting Kramer Properties and the Trust each owned one-half interests in the Plainfield farm, they argued the chancery case was brought to resolve the entirety of the parties' interests in the farm, not a mere fractional interest. According to the motion, the estate's lawyer did not object.

¶ 21    The court granted the motion, thus removing from the legal description the reference to an undivided two-twelfths interest. In other words, the settlement order now reflected the parties' intent that the settlement concern their entire interests in the Plainfield farm.

¶ 22        F. Hartz's and the Fazios' Cross-Motions to Compel Distribution

¶ 23    Several claims were filed against Herman's estate over the ensuing years. According to Hartz, "[a]ll interested parties agreed to defer distribution of the trust assets" until the claims against the estate were resolved.

¶ 24        In August 2022—after the last remaining claim was resolved—the Fazios and Hartz filed cross-motions "to compel distribution of Trust assets" and later filed memoranda in support of their positions. At the time, only two assets remained in the Trust awaiting distribution: an undivided one-half interest in the Plainfield farm and an undivided one-half interest in other real estate that is not at issue in this appeal. At base, the parties' dispute concerned entitlement to the Trust's interest in the Plainfield farm. The Fazios asserted Hartz was entitled only to a life estate, with the remainder going to them. Hartz asserted she was entitled to a fee-simple estate in the Trust's interest.

¶ 25        Specifically, Hartz contended article 7(C) of the Trust, read on its own, was ambiguous. However, she argued, when read with the Trust's remaining provisions, it was clear Herman intended to gift her a fee-simple estate in the Trust's undivided one-half interest. Alternatively, Hartz asked the court to enforce the settlement order by directing the successor cotrustees to convey to her in fee simple the undivided one-half interest.

¶ 26        The Fazios contended article 7(C) of the Trust unambiguously gifted to them the Trust's undivided one-half interest in the Plainfield farm, subject to a life estate that was gifted to Hartz. Regarding the settlement order, the Fazios argued Hartz was required to make a claim against the estate because Herman did not amend the Trust to give effect to the settlement order. They noted the Probate Act contains two limitations periods for bringing claims against the estate: a six-month period when the executor mails or delivers notice of the estate's opening to the decedent's creditors (755 ILCS 5/18-12(a) (West 2014)), or a two-year period if no notice is mailed or delivered (*Id.* § 18-12(b)). They contended Hartz's claim was time-barred under either provision because it was filed more than seven years after Herman's death. Thus, they maintained, the court should direct the successor cotrustees to give effect to article 7(C) and not the settlement order.

6

¶ 27     ONB, as successor cotrustee of the Trust, intervened in the proceedings. ONB took no position in the dispute between the Fazios and Hartz. It merely asked the court for an "order of direction" as to the proper distribution of the Trust's undivided one-half interest.

¶ 28     Thus, the parties' cross-motions essentially asked the circuit court to answer two questions: (1) whether article 7(C) of the Trust gifted to Hartz a fee-simple estate or a life estate with the remainder to the Fazios in the Trust's undivided one-half interest in the Plainfield farm; and (2) if article 7(C) granted Hartz a life estate, whether the settlement order, rather than article 7(C) of the Trust, should control the disposition of the Trust's interest in the Plainfield farm.

¶ 29                    G. The Circuit Court's Denial of the Cross-Motions to Compel

¶ 30     In June 2023, the circuit court entered a written order, denying both cross-motions without prejudice. The court first determined that article 7(C) of the Trust unambiguously gifted the Trust's undivided one-half interest in the Plainfield farm to the Fazios, subject to a life estate gifted to Hartz. Turning to the settlement order, the court addressed the parties' arguments as if Hartz was a claimant against the estate and concluded Hartz's claim was timely. The court determined the two-year limitations period applied because no notice was mailed or delivered to Hartz in accordance with the Probate Act (even though she, as administrator of the estate, was the person responsible for mailing or delivering such notice). The court next found Kramer's March 2016 motion to amend the settlement order provided "sufficient notice of a claim filed by at least Melitha *** , and perhaps *** Hartz herself as a third-party beneficiary to the settlement." The court left open the question of the proper disposition of the Trust's interest in the Plainfield farm and appointed a special administrator to defend Hartz's claim.

¶ 31                    H. The Fazios' Motion to Reconsider

7

¶ 32    The Fazios moved to reconsider, challenging the court's determination that Hartz's claim grounded in the settlement order was timely. They also raised an entirely new argument to challenge enforcement of the settlement order: the court erred by "[n]ot recognizing that the failure of Kristi Hartz and/or Melitha Kramer to file an amended complaint in [the chancery case] substituting the personal representative of the Herman J. Fritz Estate as the defendant in the matter bar[red] enforcement of said case against the estate" under section 2-1008(b)(2) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1008(b)(2) (West 2016)). They contended that because no motion to substitute the estate was made within 90 days of the suggestion of record of Herman's death, Herman's estate should have been "dismissed as a party in that case."

¶ 33    The special administrator responded to the motion, positing the issue was whether the settlement order bound the Trust. He took no issue with the June 2023 order or its reasoning. Instead, the special administrator believed the issue was whether the probate court had "the need, or ability *** to address the legal effect of a Court Order entered upon the Trust in the [chancery case]." The special administrator noted the Trust owned the undivided one-half interest in the Plainfield farm. Therefore, he continued, "the successor trustee of the Trust would be the party to whom all claims and suits should be directed with respect to the subject property." As a result, the special administrator argued, the "timing of probate claims [was] irrelevant."

¶ 34    Hartz also responded to the Fazios' motion to reconsider. Hartz likewise contended the Probate Act's limitations period was inapplicable because property interests held in a trust are not a part of a decedent's estate. Hartz maintained, however, the court had personal and subject-matter jurisdiction to direct the cotrustees to distribute the Plainfield farm. She argued the settlement order was enforceable against the Trust and trumped the Trust's provisions. As a result, she contended, the Trust's undivided one-half interest should be distributed to her.

8

¶ 35    After a hearing, the court denied the motion to reconsider.

                              I. The Court's Final Judgment

¶ 37    Hartz then moved to enforce the settlement order, asking for an order directing the successor cotrustees to execute a deed conveying to her in fee simple the Trust's undivided one-half interest in the Plainfield farm. The court granted the motion, and this appeal followed.

                              II. ANALYSIS

                              A. Rule 341 Violations

¶ 40    As an initial matter, we address the Fazios' noncompliance with the Illinois Supreme Court rules governing the form and content of appellate briefs. Rule 341(h)(6) requires the appellant to present a statement of the facts necessary to our understanding of the case, stated accurately and fairly without argument or comment, and to support its presentation "with appropriate reference to the pages of the record on appeal." Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020). Rule 341(h)(7) requires a party to present argument, "with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (Oct. 1, 2020).

¶ 41    The Fazio's 12-page statement of facts contains more than 100 factual assertions but only six references to the record. Additionally, their statement of facts contains two sentences which can fairly be characterized as commentative or argumentative.[4] What is more, the Fazios supplied a total of zero references to the record in the argument portion of their brief.

¶ 42    The Fazios committed three additional violations of the rules governing the form and content of appellate briefs. First, except for its table of contents, the Fazios' brief lacks any

---

[4] The Fazios state, (1) "*Conveniently*, the correction [to the settlement order] sought by Kramer, expanded the amount of real estate to be tendered to Hartz per the [settlement order]" (emphasis added); and (2) "In fact, Hartz [*sic*] failure to [object to Kramer's motion to amend the settlement order] was beneficial to her individually, but arguably, was not in the interests of the Fritz estate."

pagination. See Ill. S. Ct. R. 341(a) (eff. Oct. 1, 2020). Second, the Fazios ask us to construe section 2-1008 of the Code and sections 18-3 and 18-12 of the Probate Act, yet they have failed to provide us with a verbatim recitation of the pertinent parts of the statute under an appropriate heading. See Ill. S. Ct. R. 341(h)(5) (eff. Oct. 1, 2020). Third, the Fazios did not include with their separate appendix a table of contents of the record on appeal and instead provided the table of contents of the record at the end of their brief. See Ill. S. Ct. R. 342 (eff. Oct. 1, 2019).

¶ 43     We have repeatedly admonished litigants that "[t]he supreme court rules governing the form and content of appellate briefs are not mere suggestions but, rather, are mandatory and have the force of law." *In re Marriage of Reicher*, 2021 IL App (2d) 200454, ¶ 30. When an appellant fails to comply with Rule 341, we have discretion to sanction the appellant by, among other things, striking the brief and dismissing the appeal. *Id.*; see Ill. S. Ct. R. 375(a) (eff. Feb. 1, 1994) (listing potential sanctions for a party's failure to comply with the Supreme Court Rules). "The striking of a party's brief and dismissal of the appeal, however, is a harsh sanction, which is ordinarily reserved for the most egregious failures to comply with the rules and those that hinder our review." *Reicher*, 2021 IL App (2d) 200454, ¶ 30.

¶ 44     We decline to enter the harsh sanction of striking the Fazios' brief despite these violations, because the violations have not materially hindered our review. *Cf. Litwin v. County of La Salle*, 2021 IL App (3d) 200410, ¶¶ 3-12 (discussing Rule 341 noncompliance that warranted the sanction of dismissal); *Hall v. Naper Gold Hospitality, LLC*, 2012 IL App (2d) 111151, ¶¶ 7-15 (same). That said, the Fazios' noncompliance with the briefing rules has made our review more time-consuming and more tedious than it otherwise should have been. We caution the Fazios and their attorney that any future noncompliance with the supreme court rules governing the form and content of appellate briefs will not be met with such leniency.

¶ 45                                    B. The Merits

¶ 46        On appeal, the Fazios ask this court to reverse the circuit court's order directing the successor cotrustees to convey in fee simple to Hartz the Trust's undivided one-half interest in the Plainfield farm. They also ask this court to order "the Plainfield [farm] to be distributed to [them]."

¶ 47        At the outset, we note the Fazios do not dispute the settlement order provided that Hartz would be given the Trust's undivided one-half interest in the Plainfield farm upon Herman's death. Indeed, as amended, the settlement order required the *entire Plainfield farm*—including both the Trust's and Kramer Properties' undivided one-half interests—to be given to Hartz upon Herman's death. Nor do the Fazios dispute the settlement order might control over the contrary terms of article 7(C) of the Trust. Instead, they raise three procedural matters that they contend required the court to give effect to article 7(C) of the Trust and not the settlement order.

¶ 48        We further note the issues presented in this appeal are questions of law. Therefore, our review is *de novo*. See *People v. Morgan*, 2025 IL 130626, ¶ 22 (questions of law are reviewed *de novo*). We now turn to the Fazios' arguments.

¶ 49                            1. *Section 2-1008(b)(2) of the Code*

¶ 50        The Fazios first argue the court erred by allowing Hartz to enforce the settlement order against the estate because Hartz and Melitha did not amend the partition complaint before Melitha and Kramer Properties moved to amend the settlement order in March 2016. In support, they cite section 2-1008(b)(2) of the Code, which states, "If a person against whom an action has been brought dies, and the cause of action survives and is not otherwise barred, his or her personal representative shall be substituted as a party." 735 ILCS 5/2-1008(b)(2) (West 2014). When a defendant dies and the death is suggested of record, the plaintiff has 90 days in which to substitute the representative. *Id.* § 2-1008(b). Otherwise, "the action may be dismissed as to the deceased

11

party." *Id.* The Fazios note Melitha and Kramer Properties' March 2016 motion to amend the settlement order suggested Herman's death of record. Because Melitha and Kramer Properties did not seek leave to amend the partition complaint to substitute the estate's representative as the defendant, they continue, Herman "should have been dismissed as a party in that case."

¶ 51 We view this contention as an impermissible collateral challenge to the settlement order. A collateral challenge occurs when a party attempts to impeach a judgment in an action other than the one in which the judgment was rendered. *Village of Vernon Hills v. Heelan*, 2014 IL App (2d) 130823, ¶ 29. It is well established that "[o]nce a court with proper jurisdiction has entered a final judgment, that judgment can only be attacked on direct appeal, or in one of the traditional collateral proceedings *** defined by statute." *Malone v. Cosentino*, 99 Ill. 2d 29, 32-33 (1983); *Young v. Lorain*, 11 Ill. 624, 637 (1850); see 735 ILCS 5/art. 10 (West 2022) (permitting collateral challenges known as *habeas corpus* proceedings); 725 ILCS 5/122-1 *et seq.* (West 2022) (permitting collateral challenges known as postconviction proceedings); 735 ILCS 5/2-1401 (West 2022) (permitting collateral challenges known as petitions for relief from judgment).

¶ 52 The Fazios argue the court in the chancery case should not have amended the settlement order in March 2016 and instead "should have *** dismissed [Herman] as a party in that case." They seem to assert—without actually saying so or explaining why—that the failure to substitute the representative of Herman's estate rendered the settlement order, as amended, deficient and unenforceable. The Fazios, however, are attempting to challenge the settlement order in a proceeding wholly distinct from the one in which the order was entered. See *Heelan*, 2014 IL App (2d) 130823, ¶ 29. And they do not argue the amended settlement order was void. See *In re N.G.*, 2018 IL 121939, ¶ 43 (explaining a void judgment may be attacked "at any time in any proceeding

12

whenever a right is asserted by reason of that judgment"). Accordingly, we reject the Fazios' contention as an impermissible collateral attack on the settlement order.

¶ 53                                          2. *Timeliness and Necessity of Claim Against Estate*

¶ 54          The Fazios' remaining two arguments are related; both arguments challenge the circuit court's determination that Hartz timely brought a claim against the estate. First, the Fazios argue the court erred when it concluded the six-month limitations period set forth in section 18-12(a) of the Probate Act (755 ILCS 5/18-12(a) (West 2014)) did not apply to Hartz's claim. They maintain that because Hartz, as representative, had actual notice that Herman's will had been admitted to probate, she was required to bring her claim within six months of the date notice was first published, notwithstanding the fact she did not mail or deliver notice (to herself). Second, they contend that even if the two-year limitations period set forth in section 18-12(b) (*id.* § 18-12(b)) applied, Melitha and Kramer Properties' March 2016 motion to amend the settlement order did not constitute a proper claim against the estate.

¶ 55          Hartz responds that the Fazios' argument concerning the Probate Act's claims provisions "is misplaced and a red herring" because the undivided one-half interest in the Plainfield farm was not an asset of Herman's estate. Rather, it was an asset of the Trust, making the Probate Act's claims provisions inapplicable. We agree with Hartz.

¶ 56          If a decedent validly conveys an interest in property before his or her death, then that property does not become part of the decedent's estate upon the decedent's death. *Johnson v. La Grange State Bank*, 73 Ill. 2d 342, 363 (1978); see *In re Estate of Boyar*, 2013 IL 113655, ¶ 15 n.1 (noting that personal property that had been transferred to a trust years before the decedent's death "was not part of the [decedent's] estate"); accord *Bohren v. Karazeris as Trustee of Michael P. Karazeris Trust Dated March 1, 1995*, 2022 IL App (1st) 211249-U, ¶ 17. Further, when "a

13

decedent had no title to specific property, *** actions concerning that property are not subject to the claims limitation period" set forth in the Probate Act. *In re Estate of Kolbinger*, 175 Ill. App. 3d 315, 322 (1988).

¶ 57 Here, Hartz was making a claim for a Trust asset. It is undisputed that Herman conveyed to the Trust his undivided one-half interest in the Plainfield farm well before his death. He conveyed an undivided one-third interest in 1993 and his remaining undivided one-sixth interest in 2000. It is likewise undisputed that the one-half interest remained a Trust asset at the time of Herman's death. Accordingly, because the one-half interest did not become a part of the estate upon Herman's death, Hartz's request that it be distributed according to the settlement order was not subject to the Probate Act or its claims limitations period. See *id.*

¶ 58 The Fazios nevertheless argue Hartz was required to make a claim against Herman's estate because the settlement order did not specify how the undivided one-half interest was to be transferred to Hartz upon Herman's death. The Fazios note the settlement order did not state whether Herman was required to amend or dissolve the Trust or whether the settlement order itself amended the Trust. According to the Fazios, the resulting conflict between the Trust and the settlement order could "only be resolved by making a claim" against the estate.

¶ 59 The Fazios have forfeited this argument for two reasons. First, they raised it for the first time in their reply brief. See *In re Charles W.*, 2014 IL App (1st) 131281, ¶ 54 (appellants must make their arguments in their opening briefs and cannot raise them for the first time in the appellate court in a reply brief); Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (points not argued in an opening brief are forfeited and may not be raised for the first time in a reply brief). Second, the Fazios failed to cite any authority to support their position. Illinois Supreme Court Rule 341(h)(7) requires a party to cite authority in support of its contentions on appeal. *Id.* As we have repeatedly written,

14

this court is not a repository into which a party may foist the burden of research. *People v. Woods*, 2024 IL App (3d) 230592, ¶ 31. A party forfeits contentions that are not supported with citations of legal authority. *Ford v. Round Barn True Value, Inc.*, 377 Ill. App. 3d 1109, 1115 (2007). Accordingly, we find the Fazios have forfeited this argument and decline to address it further. *Id.*; *Charles W.*, 2014 IL App (1st) 131281, ¶ 54.

¶ 60    Because the Fazios limited themselves to three unmeritorious arguments in their opening brief, we could simply affirm the judgment on that basis, as they have not met their burden of establishing error. See *Woods*, 2024 IL App (3d) 230592, ¶ 31 (explaining the appellant has the burden to establish error that warrants reversal). However, we feel compelled to explain why it was not error for the circuit court to order the successor cotrustees to convey to Hartz, in fee simple, the Trust's undivided one-half interest.

¶ 61                    3. *The Circuit Court Properly Ordered Distribution to Hartz*

¶ 62    The resolution of this appeal comes down to a simple question: did the circuit court correctly give effect to the settlement order which required something different than the express terms of the Trust? The procedural arguments raised in the Fazios' opening brief fall short of establishing the court erred in doing so, for the reasons stated above. We now explain why the court's judgment was proper.

¶ 63    First, we briefly recount the context and import of the settlement order. In 2011, Kramer Properties filed the chancery case, which sought a partition of the Plainfield farm. At that time, Kramer Properties and the Trust each owned undivided one-half interests in the Plainfield farm. By its request for partition, Kramer Properties' chancery complaint sought to either physically divide the Plainfield farm or have it sold, with the proceeds distributed to the parties. 735 ILCS 5/17-105 (West 2010). However, the chancery case terminated short of those possible resolutions.

15

Instead, in January 2014, Herman and Kramer Properties settled, agreeing the Plainfield farm would be "irrevocably given" to Hartz upon Herman's death, and the chancery case was dismissed, leaving intact the Plainfield farm and the parties' joint ownership. After Herman refused to sign a settlement agreement, the court, in August 2014, entered the settlement order, which memorialized the terms of the parties' agreement. We again note there is no dispute as to the meaning of the settlement order. It required, upon Herman's death, the Plainfield farm, including the Trust's undivided one-half interest, to be "irrevocably given" to Hartz. The Fazios concede this language meant the Trust's undivided one-half interest was to be given, in fee simple, to Hartz when Herman died.

¶ 64 Second, we find Hartz had standing to enforce the settlement order, even though she was not a party to the chancery case. "A settlement agreement is in the nature of a contract and is governed by principles of contract law." *Rose v. Mavrakis*, 343 Ill. App. 3d 1086, 1090 (2003). "There is a strong presumption that the parties to a contract intend that the contract's provisions apply only to them, and not to third parties." *Martis v. Grinnell Mutual Reinsurance Co.*, 388 Ill. App. 3d 1017, 1020 (2009). However, when the language of a contract evidences an intent to benefit a third party, the third party may enforce the contract. *Id.* "Such an intention must be shown by an express provision in the contract identifying the third-party beneficiary by name or by description of a class to which the third party belongs." *Id.*

¶ 65 Here, the settlement order clearly and expressly identified Hartz as a party who would receive a benefit. The settlement order stated the Plainfield farm would "be irrevocably given to [Hartz]" upon Herman's death. As such, Hartz had standing to enforce the settlement order.

¶ 66 Third, the Fazios concede the circuit court in these proceedings had personal jurisdiction over the necessary parties, *i.e.*, the successor cotrustees and the beneficiaries. And they concede

16

the court had subject-matter jurisdiction over the controversy the parties presented. Indeed, while Hartz's request to enforce the settlement order was brought in the context of the probate proceeding, the court nevertheless had the inherent authority to enforce the settlement order. *Smithberg v. Illinois Municipal Retirement Fund*, 192 Ill. 2d 291, 297 (2000). What is more, the settlement order contained an express reservation of jurisdiction to enforce it.

¶ 67        Because Hartz had standing and the circuit court had jurisdiction to enforce the settlement order, we find the circuit court properly enforced the settlement order's terms, by ordering the successor cotrustees to convey to Hartz in fee simple the Trust's undivided one-half interest in the Plainfield farm. To be sure, this case was complicated by the settlement order's failure to require Herman to ensure his estate planning documents comported with the settlement order. That omission left in effect a provision of the Trust that contravened Herman's later agreement to give Hartz the Trust's interest in the Plainfield farm. Nevertheless, the Trust gave Herman the power, as settlor, to amend the Trust to extinguish the Fazios' interest in the Plainfield farm and the power, as trustee, to settle any claims against the Trust's property. And Herman—acting in his individual capacity and in his capacity as trustee—agreed that Hartz should receive the Trust's undivided one-half interest in the Plainfield farm when he died. Though Herman refused to execute a written settlement agreement, there is no dispute Herman willingly settled the chancery case and that the settlement order accurately reflected his agreement.[5] Even though it might have been prudent for the settlement order to also require Herman to ensure the settlement order was given indisputable precedence (by amending the Trust or by some other means), we do not see this omission as a just

_____

[5]We note the Fazios' statement of facts states, "It should also be noted that [Herman] disputed that the contents of the [settlement order] were an accurate reflection of the terms agreed upon between the parties [to the chancery case]." The Fazios did not provide this court with a reference to the record by which we can verify their assertion, and our review of the record reveals no support for it, other than the Fazios' say-so. In any event, we have already established that the settlement order is not amenable to collateral challenge.

17

reason to require the Fazios be given the Trust's undivided one-half interest. See *Smithberg*, 198 Ill. 2d at 306 (noting the court's equitable power "to consider done that which ought to have been done"); *Lincoln National Life Insurance Co. v. Watson*, 71 Ill. App. 3d 900, 902 (1979) (citing *In re Estate of Krotzsch*, 60 Ill. 2d 342, 346 (1975) and *Shay v. Penrose*, 25 Ill. 2d 447, 449 (1962)) (noting the "ancient maxim of the courts of chancery that equity regards as done that which ought to be done" (internal quotation marks omitted)). Accordingly, we conclude the circuit court properly enforced the settlement order by directing the successor cotrustees to convey to Hartz in fee simple the Trust's undivided one-half interest in the Plainfield farm.

¶ 68 Finally, we note the Fazios raise arguments in their reply brief that go beyond the procedural contentions raised in their opening brief. We need not consider those arguments. *Charles W.*, 2014 IL App (1st) 131281, ¶ 54; Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Moreover, we decline to venture into unbriefed issues. See *People v. Givens*, 237 Ill. 2d 311, 324 (2010) (reviewing court should refrain from addressing unargued and unbriefed issues). Indeed, addressing an unbriefed issue requires the court to speculate as to the arguments the parties might have presented, which would lead to further injustice. *Id.* (quoting *People v. Rodriguez*, 336 Ill. App. 3d 1, 14 (2002)).

¶ 69                                                    III. CONCLUSION

¶ 70 For the reasons stated, we affirm the judgment of the circuit court of Will County.

¶ 71 Affirmed.