*In re* K.O. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. W.O., Respondent-Appellant).

First District (4th Division)   No. 1—00—2869

Opinion filed December 19, 2002.

Randy Crumpton, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Jennifer Streeter, and Mary C. Joly, Assistant State's Attorneys, of counsel), for the People.

Patrick T. Murphy, Public Guardian, of Chicago (Charles P. Golbert and Allison I. Ortlieb, of counsel), guardian *ad litem.*

JUSTICE HARTMAN delivered the opinion of the court:

This appeal arises out of two petitions for adjudication of wardship filed by the State requesting the adjudication of both C.W. (born March 23, 1989) and K.O. (born December 1, 1990) as wards of the court and temporary removal from custody of their parents, Winfred O., the respondent, and Charlotte O.[1] Respondent is C.W.'s stepfather and K.O.'s biological father. Charlotte is the biological mother of both children. After an adjudicatory hearing, the circuit court found that respondent neglected both minors due to an injurious environment and that C.W. was sexually abused by respondent. The court subsequently found Charlotte fit, willing and able to care for the minors and respondent unfit, unwilling and unable to maintain custody. The

---

[1] Neither Charlotte nor C.W.'s natural father, who also was found to be an unfit parent, is part of this appeal.

court granted Charlotte's motion to close the case. Respondent appeals.

The issues presented for review include whether: (1) the circuit court abused its discretion by denying respondent a continuance for the adjudication hearing; (2) the circuit court's findings of neglect and/or abuse of C.W. and K.O. were against the manifest weight of the evidence; and (3) respondent was denied a fair trial due to ineffective assistance of counsel.

On December 17, 1997, the State filed petitions for adjudication of wardship on behalf of both C.W. and K.O., alleging that both girls were abused and neglected due to a substantial risk of physical injury and injurious environment. The petition for C.W. alleged she suffered sexual abuse, specifying that, for the previous two years, respondent would take her into his bedroom; tell her to get into his bed and take off her underwear; remove his pants and force her to kneel down; and rub his penis on her vagina and ejaculate on her.

At a temporary custody hearing on the same date, without respondent present, the parties stipulated that if Department of Children and Family Services (DCFS) child protection investigator Sharon Dorfman were called to testify, she would state that respondent abused C.W. sexually for two years, has been convicted of child pornography in 1988[2] and aggravated criminal sexual assault in 1990 and is registered as a sex offender. The stipulation also stated that Charlotte was aware that respondent was a registered sex offender; she had married him two years ago; and she allowed him to babysit the minors while she was at work. The circuit court awarded temporary custody of the minors to DCFS.

On March 31, 1998, the circuit court appointed attorney Patrick Schlee to represent respondent in the abuse and neglect proceedings. At that time, respondent was in custody at the Cook County Correctional Center awaiting trial in relation to criminal proceedings in this matter.

On August 4, 1998, respondent moved to compel the children to testify at the adjudication hearing. The circuit court denied the motion after considering the minors' ages, the statutory corroboration requirement, the possibility of *in camera* testimony and respondent's pending criminal trial.

Thereafter, the adjudication hearing was set for August 19, 1999, but was continued three times: on August 16, 1999, on the State's mo-

---

[2]Although the stipulation states that respondent was convicted of child pornography in 1988, the record elsewhere indicates that the guilty finding for that crime actually occurred in 1998.

tion; on October 15, 1999, on respondent's motion; and on December 7, 1999, on the public guardian's motion.

Prior to the adjudication hearing on February 3, 2000, respondent moved to continue the proceeding in order to subpoena several witnesses, claiming that he had not been present at the last court date, was unaware of the adjudication date and was prepared inadequately because "he needed to know that [February 3, 2000,] was a definite trial date." The circuit court denied respondent's motion, stating that it was in the best interests of the minors that the case proceed to trial and that it was respondent's duty to keep track of his case, even when represented by an attorney.

At the adjudication hearing, Dorfman testified that this case first came to her attention when a mandated reporter called a telephone hotline stating that C.W. had made an outcry of sexual abuse by respondent. She spoke with Charlotte on December 15, 1997, regarding the allegations of sexual abuse. She asked Charlotte, who was aware of respondent's prior sex offense convictions, why he was allowed into her home. Charlotte answered that respondent told her he had completed therapy and she believed him even though he never presented any documentation. Charlotte was unaware that C.W. was being abused sexually.

Dorfman testified that she was present at C.W.'s victim-sensitive interview. Dorfman stated that there was no physical evidence linking respondent to the offense, but K.O. told her that she saw respondent and C.W. on top of each other, "in a compromising position," and heard C.W. say "I won't tell mom," or "mom won't know."

Dorfman also performed a background check on respondent and discovered that he had previous convictions of child pornography, aggravated criminal sexual assault and failure to register as a sex offender.

Skokie police detective Thomas Nelis testified that he interviewed C.W. on December 15, 1997. During that conversation, she related that when she was at home and her mother was at work, respondent "would have her get into the bed with him and pull his pants down, and make her get on her knees, and he would be behind her and would rub his private part on her butt." C.W. also told Nelis that when respondent would do this, she saw "pee which was sticky and yellow," with a "white-like stream."

Nelis stated that he was unaware of any scientific evidence of the abuse, but understood that DCFS had been trying to conduct a medical exam. During the investigation, respondent told Nelis to write down whatever C.W. said in writing and he would sign it. When Nelis requested respondent's side of the story, he refused.

Following Nelis's testimony, the State entered two exhibits into evidence. The first exhibit, C.W.'s medical assessment, stated that the "[e]xamination does not rule out sexual abuse," and "confirmed the history of stepfather laying [sic] on top of her with his—his or her clothes off and rubbing his penis over her vagina almost every night."[3] The second exhibit was a certified copy of respondent's indictment and conviction of predatory criminal sexual assault of C.W. The State and public guardian then rested their cases in chief.

Respondent testified on his own behalf against the advice of counsel. He stated that he never sexually abused C.W. He acknowledged that a jury found him guilty of criminal charges pertaining to this matter.

The circuit court found that C.W. was abused sexually, placed at a substantial risk of physical injury and subjected to an injurious environment. Respondent was named the perpetrator of the abuse. The court further held that K.O. was subjected to an injurious environment due to the abuse of her sister. The court based its findings on witness testimony, medical records and respondent's certified copy of his criminal conviction.

Following the adjudication, the circuit court proceeded to a disposition hearing, where it heard testimony from a DCFS caseworker and the children's therapist. The court found that Charlotte was fit, willing and able to care for the children, and closed their cases. Respondent was found unable, unwilling and unfit to care for C.W. and K.O.

On August 21, 2000, the circuit court heard argument on respondent's motions for a new trial and appointment of other counsel and *pro se* addenda. With respect to respondent's ineffective assistance of counsel claims, the court found that there was "very effective assistance of counsel here." According to the court, Schlee "presented each and every motion and sometimes I questioned why he was doing it, but every possible, I think, issue that could have been visited here." The court noted that some of the arguments respondent raised involved strategy limited to counsel's decision and, regardless of counsel's performance, the outcome of his case would not have been different. The court found the evidence was overwhelming and denied the motions. Respondent timely appeals.

## I

Respondent, citing *In re Moore*, 87 Ill. App. 3d 1117, 409 N.E.2d 435 (1980) (*Moore*), first asserts that the circuit court abused its discre-

---

[3]The documentation of the medical assessment is not included in the record.

tion by not granting a continuance for the adjudication hearing in violation of his due process rights. He argues that, because he missed the previous court date, he was uncertain of the February 3, 2000, adjudication hearing and, therefore, was unable to subpoena key witnesses or secure transcripts from the criminal trial for impeachment purposes. According to respondent, if he initially had been apprised of his rights for the adjudication hearing, he would have understood his responsibilities and would have been prepared for trial better.

The State and public guardian respond that the circuit court had no duty to continue the adjudication hearing at respondent's request and, notwithstanding duty, the denial of a continuance did not result in prejudice sufficient to warrant the reversal of the hearing. Further, they contend that the court was within its discretion to deny the continuance because the interests of the various parties were weighed and the court found that it was in the best interest of the minors to proceed.

■ Illinois recognizes that "serious delay in the adjudication of abuse, neglect, or dependency cases can cause grave harm to the minor." 705 ILCS 405/2—14 (West 2000). There is no absolute right to a continuance. *In re D.P.*, 327 Ill. App. 3d 153, 158, 763 N.E.2d 351 (2001). It is within the juvenile court's discretion whether to grant or deny a continuance motion, and the court's decision will not be disturbed absent manifest abuse or palpable injustice. *In re K.S.*, 203 Ill. App. 3d 586, 596, 560 N.E.2d 1380 (1990); *Continental Illinois National Bank & Trust Co. of Chicago v. Eastern Illinois Water Co.*, 31 Ill. App. 3d 148, 157, 334 N.E.2d 96 (1975). The denial of a request for continuance is not a ground for reversal unless the complaining party has been prejudiced by such denial. *In re M.R.*, 305 Ill. App. 3d 1083, 1086, 713 N.E.2d 1241 (1999).

■ Code of Civil Procedure section 2—1007 (735 ILCS 5/2—1007 (West 2000)) governs the rules of continuances and provides, "[o]n good cause shown, in the discretion of the court and on just terms, additional time may be granted for the doing of any act or the taking of any step or proceeding prior to judgment." Continuances in juvenile cases may be granted "[u]pon written motion of a party filed no later than 10 days prior to hearing, or upon the court's own motion and only for good cause shown." 705 ILCS 405/2—14(c) (West 2000). The term, "good cause," as applied in the Juvenile Court Act of 1987 (705 ILCS 405/1—1 *et seq.* (West 2000)) (Act), is strictly construed and must be in accordance with Supreme Court Rules 231(a) through (f). 705 ILCS 405/2—14(c) (West 2000); 134 Ill. 2d Rs. 231(a) through (f) (Rule 231). The court may continue the hearing "only if the continuance is consistent with the health, safety and best interests of the minor." 705 ILCS 405/2—14(c) (West 2000).

■ Rule 231(a) states that a party moving for a continuance due to the absence of material evidence must attach an affidavit showing: (1) "that due diligence has been used to obtain the evidence, or the want of time to obtain it"; (2) "of what particular fact or facts the evidence consists"; (3) "if the evidence consists of the testimony of a witness, his place of residence, or if his place of residence is not known, that due diligence has been used to ascertain it"; and (4) "that if further time is given the evidence can be procured." 134 Ill. 2d R. 231(a).

■ In the instant case, respondent moved for a continuance immediately prior to the adjudication hearing, not 10 days in advance, as required by statute. 705 ILCS 405/2—14(c) (West 2000). Respondent failed to provide the circuit court with an affidavit explaining the absence of material evidence in contravention of Rule 231 (134 Ill. 2d R. 231(a)).

Respondent also has not established good cause to warrant a continuance. Although respondent claims the denial of a continuance prevented him from subpoenaing key witnesses or securing transcripts from his criminal trial, he has not explained and, the record does not show, why this missing evidence is material.

In addition, respondent's reliance upon *Moore* is misplaced. Here, unlike *Moore*, respondent is not challenging lack of apprisal regarding the possibility of losing permanent custody of his children; rather, he contests the denial of a continuance for the purposes of securing and presenting material evidence. Under these circumstances, the record establishes sufficient apprisal of respondent's rights to obtain the necessary evidence. In respondent's August 1998 motion to compel children to testify, he pointed out certain discrepancies in the allegations made by C.W., arguing, "[t]he only way to resolve these discrepancies is to allow the children to testify." The circuit court, upon denial of the motion, recognized the lack of other evidence in this case. Thereafter, respondent had one year and five months until the adjudication hearing to resolve discrepancies in C.W.'s testimony by procuring other material evidence, but failed to do so.

Respondent's contention that his missed court date prior to the adjudication hearing caused him to be unprepared also lacks merit. Due process requires adequate notice to the minor's parents in a juvenile proceeding. *In re J.P.J.*, 109 Ill. 2d 129, 134, 485 N.E.2d 848 (1985). Although a parent has a right to be present at a hearing to terminate parental rights, it is not mandatory that he or she be present, and the circuit court is not obligated to wait until he or she chooses to appear. *In re C.L.T.*, 302 Ill. App. 3d 770, 778, 706 N.E.2d 123 (1999) (*C.L.T.*). Neither respondent nor his attorney claimed lack of notice of the February 3, 2000, adjudication hearing. Nevertheless,

even if respondent had not received notice, the record shows counsel was aware of the date. Notice to an attorney is considered notice to the client, notwithstanding whether the attorney actually has communicated such knowledge to the client. *In re B.C.*, 317 Ill. App. 3d 607, 613, 740 N.E.2d 41 (2000). Moreover, respondent had a duty to follow the progress of his case and learn from his attorney the date of the adjudication hearing. *C.L.T.*, 302 Ill. App. 3d at 778. Accordingly, respondent's due process rights were not violated.

Further, the petitions for adjudication were filed in December 1997. The supreme court has emphasized that keeping a minor's status in limbo for an extended period of time is not in the best interests of the child. *In re D.L.*, 191 Ill. 2d 1, 13, 727 N.E.2d 990 (2000). Therefore, the circuit court properly focused on the best interests of the minors in denying respondent's motion for continuance. See 705 ILCS 405/2—14(c) (West 2000).

Based on the foregoing, respondent has failed to demonstrate an abuse of discretion resulting from the denial of his continuance motion.

## II

Respondent next argues that the circuit court's findings of neglect and abuse of C.W. and K.O. were against the manifest weight of the evidence.

The public guardian asserts that respondent has not provided the reviewing court with a complete record on appeal illustrating that the circuit court erred. Although respondent filed a supplemental record containing his certified indictment and conviction for predatory criminal sexual assault of C.W., he did not include the medical records from C.W.'s evaluation following her outcry of sexual abuse.

■ To support a claim of error on appeal, the appellant has the burden to present a sufficiently complete record. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92, 459 N.E.2d 958 (1984) (*Foutch*). Absent a record, the order entered by the circuit court is presumed to be in conformity with the law and supported by a sufficient factual basis. *Foutch*, 99 Ill. 2d at 392.

■ Here, although C.W.'s medical records are missing from the record, the report corroborating the allegations of abuse, which respondent challenges on appeal as ambiguous, was read into evidence verbatim and can be found in the report of proceedings. Therefore, the merits of respondent's contention that the circuit court's findings were against the manifest weight of the evidence will be reviewed.

■ The proceedings in the present case are civil in nature; therefore, a finding of abuse need be supported only by a preponder-

ance of the evidence. 705 ILCS 405/2—18(1) (West 2000). A preponderance of evidence is that amount of evidence that leads a trier of fact to find that the fact at issue is more probable than not. *In re C.C.*, 224 Ill. App. 3d 207, 215, 586 N.E.2d 498 (1991) (*C.C.*). The circuit court's determination of neglect will not be disturbed on appeal unless contrary to the manifest weight of the evidence. *In re A.D.W.*, 278 Ill. App. 3d 476, 482, 663 N.E.2d 58 (1996). A finding is against the manifest weight of the evidence where the record clearly demonstrates that the opposite result would be proper. *In re T.B.*, 215 Ill. App. 3d 1059, 1062, 574 N.E.2d 893 (1991). The court is afforded broad discretion when determining the existence of abuse because it is in the best position to observe and weigh witness credibility. *C.C.*, 224 Ill. App. 3d at 215.

A

Respondent initially contends that hearsay statements regarding C.W.'s sexual abuse were not sufficiently corroborated by other reliable evidence pursuant to section 2—18(4)(c) (705 ILCS 405/2—18(4)(c) (West 2000)) (section 2—18(4)(c)) of the Act. Respondent avers this testimony was unreliable because he could not cross-examine C.W. with respect to the allegations. He also asserts that C.W.'s medical records do not meet the burden of proof for admissible hearsay statements under section 2—18(4)(c).

Generally, out-of-court statements are inadmissible hearsay; however, the Act provides an exception for the admission of out-of-court statements made by minors that pertain to incidents of abuse or neglect. Section 2—18(4)(c) states:

"Previous statements made by the minor relating to any allegations of abuse or neglect shall be admissible in evidence. However, no such statement, if uncorroborated and not subject to cross-examination, shall be sufficient in itself to support a finding of abuse or neglect." 705 ILCS 405/2—18(4)(c) (West 2000).

In *In re A.P.*, 179 Ill. 2d 184, 196, 688 N.E.2d 642 (1997) (*A.P.*), the only evidence of the father's sexual abuse of the minor was the minor's hearsay statements to adult witnesses. The *A.P.* court noted that the underlying purpose of section 2—18(4)(c) is "to provide a means of proving abuse or neglect in cases where the minor is reluctant or unable to testify. To require that the minor be subject to cross-examination, that is, to testify, in order for the minor's statements to be used to support an abuse or neglect finding would entirely defeat that purpose." *A.P.*, 179 Ill. 2d at 196. The court construed section 2—18(4)(c) as requiring *either* cross-examination of the minor who made the statement or corroboration of the minor's hearsay statement. *A.P.*, 179 Ill. 2d at 196.

The *A.P.* court stated that, in the context of section 2—18(4)(c), corroborating evidence of the abuse or neglect requires independent evidence which would support a logical and reasonable inference that the alleged acts described in the hearsay statement occurred. *A.P.*, 179 Ill. 2d at 199. The court defined corroborating evidence as "evidence that makes it more probable that a minor was abused or neglected." *A.P.*, 179 Ill. 2d at 199. Sufficient corroboration of evidence under section 2—18(4)(c) is determined on a case-by-case basis. *A.P.*, 179 Ill. 2d at 198.

In the case *sub judice*, hearsay testimony of C.W.'s sexual abuse was corroborated by respondent's indictment and conviction for predatory criminal sexual assault of C.W. and C.W.'s medical assessment, which did not rule out sexual abuse and "confirmed the history of stepfather laying [*sic*] on top of her with his—his or her clothes off and rubbing his penis over her vagina almost every night." This assessment is not merely a "catch phrase," as respondent notes.[4] Any alleged ambiguity in the assessment cannot be determined by this court because respondent failed to include it in the record on appeal. The circuit court's reliance upon C.W.'s medical records in its findings of neglect and abuse is presumed to be in conformity with the law and supported by a sufficient factual basis. *Foutch*, 99 Ill. 2d at 392.

K.O. further corroborated instances of abuse through statements that were consistent with C.W.'s account. Another highly probative fact was C.W.'s ability to describe semen. An eight-year-old child would not have been able to describe semen unless she had seen it, which is unlikely unless the events C.W. described had actually taken place. See *C.C.*, 224 Ill. App. 3d at 214. The record shows that C.W. suffered from symptoms of sexual abuse, including chronic bed wetting, a strong fear of men and significant behavior problems at school and home. In addition, respondent told Nelis to write down whatever C.W. said and he would sign it, but when Nelis requested his side of the story, respondent refused to answer.

With respect to K.O., a finding of abuse of one sibling establishes a *prima facie* case of neglect based upon an injurious

---

[4]Respondent cites *In re Alba*, 185 Ill. App. 3d 286, 540 N.E.2d 1116 (1989) (*Alba*), in support of his argument that the medical assessment was not sufficient corroboration of sexual abuse, noting the insufficiency of a psychologist's testimony. In *Alba*, however, the psychologist twice stated that he could not conclude the minor had been sexually abused. 185 Ill. App. 3d at 289. Here, the medical assessment did not rule out sexual abuse and provided a history of sexual contact between respondent and C.W. Therefore, *Alba* is inapplicable to the present case.

environment to another. *In re Z.R.*, 274 Ill. App. 3d 422, 427, 654 N.E.2d 255 (1995).

Moreover, the totality of the circumstances surrounding the making of C.W.'s statements indicates sufficient reliability to support a finding of abuse. C.W.'s statements to Dorfman and Nelis that she was sexually abused by respondent were consistent as to both the act and the identity of the accuser and, as discussed above, were corroborated by K.O., who witnessed the abuse. See *A.P.*, 179 Ill. 2d at 201.

In light of the foregoing factors, respondent's contention that C.W.'s statements of sexual abuse were not sufficiently corroborated under section 2—18(4)(c) is rejected.

### B

Respondent next contends that the circuit court's findings were against the manifest weight of the evidence due to the admission of a certified copy of his criminal conviction.

The State and public guardian argue that respondent's conviction for predatory criminal sexual assault of C.W. was not only admissible, but *prima facie* evidence of the abuse, and could have been used to collaterally estop respondent from denying the abuse.

In *In re McMullen*, 29 Ill. App. 3d 284, 287, 331 N.E.2d 403 (1975) (*McMullen*), the court found a prior conviction admissible where the conviction was "directly relevant on the question of parental fitness, and was obtained in a proceeding between the same parties involved in the custody proceeding, and was not appealed." In its decision, the *McMullen* court noted the findings in *Smith v. Andrews*, 54 Ill. App. 2d 51, 203 N.E.2d 160 (1964) (*Smith*), a case relied upon by respondent, which held that defendant's conviction for rape properly was admissible in a parental fitness case as *prima facie* evidence that he committed a forcible rape. In *Smith*, the court recognized that defendant was a party to a previous proceeding in which certain facts were adjudicated against him under conditions considerably more favorable, in terms of procedural safeguards and the quantum of evidence required, than those afforded in any later civil proceeding. 54 Ill. App. 2d at 60. The *Smith* court held that defendant's convictions for robbery and rape were admissible in a parental fitness proceeding if they were relevant to some issue involved in the proceeding. 54 Ill. App. 2d at 62.

Here, like defendants in *McMullen* and *Smith*, respondent was afforded all procedural safeguards and a higher burden of proof in his criminal trial and a jury found him guilty of predatory criminal sexual assault of C.W. It follows that this conviction was admissible at the adjudication hearing because it was relevant to whether respondent sexually abused and neglected C.W. Moreover, respondent's criminal

conviction was *prima facie* evidence that he did, in fact, sexually abuse C.W. See *Smith*, 54 Ill. App. 2d at 61.

In addition, the supreme court recently has held that a defendant may be estopped from challenging the effect of a prior criminal conviction in a subsequent civil case. *American Family Mutual Insurance Co. v. Savickas*, 193 Ill. 2d 378, 387, 739 N.E.2d 445 (2000) (*Savickas*). In the instant case, respondent meets the three threshold requirements for the application of the estoppel doctrine: (1) the conduct at issue decided in the prior adjudication is identical with that presented in the civil proceeding; (2) respondent's criminal conviction was a final judgment on the merits[5]; and (3) estoppel is asserted against respondent, who was a party in the prior adjudication. See *Savickas*, 193 Ill. 2d at 387. Therefore, respondent is estopped from challenging the admission of his prior conviction for predatory criminal sexual assault.

Accordingly, the circuit court's findings of neglect and/or abuse of C.W. and K.O. were not against the manifest weight of the evidence.

### III

■ Respondent next argues that he was denied a fair trial due to ineffective assistance of counsel. He asserts a litany of errors by trial counsel, claiming that the totality of these errors resulted in such prejudice that there is a reasonable probability the results would have been different.[6]

The State and public guardian respond that Schlee's representation of respondent was objectively reasonable under prevailing standards and that respondent has not shown that, but for Schlee's ineffective representation, the results of the adjudication hearing would have been different.

---

[5]Respondent's criminal conviction for predatory criminal sexual assault was affirmed on direct appeal. See *People v. Oliver*, No. 1—00—2089 (2002) (unpublished order under Supreme Court Rule 23).

[6]Respondent asserts that trial counsel failed to: (1) interview or call 20 witnesses from his criminal trial; (2) acquire any transcript from the corresponding criminal trial; (3) provide respondent with written notice of his rights as required by section 1—5(1) (705 ILCS 405/1—5(1) (West 2000)) of the Act; (4) prepare respondent adequately for his testimony during the adjudication hearing; (5) subpoena relevant documents pertaining to this case, including prison records detailing respondent's rehabilitation and sex offender counseling; (6) interview or call Dr. Iwashita, respondent's therapist, who testified at the criminal trial; (7) investigate or develop any defense; (8) visit respondent in prison during the 26-month pendency of this case; and (9) produce four letters that respondent mailed regarding questions and concerns about defense strategy.

In Illinois, ineffective assistance of counsel is established when a defendant shows that counsel's representation fell below an objective standard of reasonableness and that, but for counsel's shortcomings, the outcome of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2064 (1984) (*Strickland*). Respondent has the same right to effective assistance of counsel as a defendant in a criminal proceeding. *In re Kr. K.*, 258 Ill. App. 3d 270, 279, 631 N.E.2d 449 (1994); *In re R.G.*, 165 Ill. App. 3d 112, 127, 518 N.E.2d 691 (1988). The *Strickland* standard requires "a reasonable probability of a different result, not merely a possibility." *People v. Gacy*, 125 Ill. 2d 117, 129-30, 530 N.E.2d 1340 (1988). Both prongs of the *Strickland* test must be satisfied before defendant can prevail on a claim of ineffective assistance of counsel. *People v. Eddmonds*, 143 Ill. 2d 501, 511, 578 N.E.2d 952 (1991). If the ineffectiveness claim can be disposed of because defendant did not suffer sufficient prejudice, a court need not consider whether counsel's performance was deficient. *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.

In the present case, the alleged errors claimed by respondent are unsupported by record evidence. Respondent has provided neither legal authority nor evidence demonstrating sufficient prejudice resulting in an outcome of the adjudication hearing that would have been different. Instead, the record supports Schlee's "very effective assistance of counsel," as noted by the circuit court. Schlee filed numerous motions prior to the adjudication hearing and, at the hearing, he argued that respondent did not neglect or abuse C.W. and K.O., cross-examined witnesses, respected respondent's wishes to testify on his own behalf, delivered a closing argument and continued to represent respondent at the dispositional hearing. In addition, Schlee filed and argued respondent's posttrial motions. The record shows no instance of substantial prejudice depriving respondent of a fair trial. Respondent's ineffective assistance of counsel claims are without merit.

Accordingly, the decision of the circuit court of Cook County finding that respondent abused and/or neglected C.W. and K.O., perpetrated sexual abuse against C.W. and was an unfit parent is affirmed.

Affirmed.

THEIS, P.J., and GREIMAN, J., concur.