2024 IL App (4th) 230301-U

NOS. 4-23-0301, 4-23-0302, 4-23-0303, 4-23-0304 cons.

NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 22, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* K.N., B.S.-E., T.S.-E., and A.S., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Ogle County |
|       Plaintiff-Appellee, | ) | Nos. 19JA9 |
| | ) |     19JA10 |
|       v. | ) |     20JA8 |
| Amanda N., | ) |     20JA9 |
|       Respondent-Appellant). | ) | |
| | ) | Honorable |
| | ) | John B. Roe IV, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Presiding Justice Turner and Justice Doherty concurred in the judgment.

**ORDER**

¶ 1   *Held*: The appellate court affirmed, concluding the trial court did not abuse its discretion in denying respondent's motion to continue the termination hearing.

¶ 2   In January 2023, the State filed separate petitions to terminate the parental rights of respondent, Amanda N., as to her minor children, A.S. (born in 2014), K.N. (born in 2015), B.S.-E. (born in 2018), and T.S.-E. (born in 2020). In March 2023, the trial court granted the State's petitions and terminated respondent's parental rights as to all four minors. In this consolidated appeal, respondent argues the court violated her right to due process by denying her motion to continue the termination hearing. We disagree and affirm.

¶ 3                    I. BACKGROUND

¶ 4         A. Neglect Petitions, Adjudications, and Dispositions

¶ 5                                    1. *K.N. and B.S.-E.*

¶ 6            In February 2019, the State filed separate petitions for adjudication of wardship of K.N. and B.S.-E. The petitions alleged that K.N. and B.S.-E. were neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2018)) because (1) respondent's paramour, David E., was an untreated convicted child sex offender previously indicated by the Illinois Department of Children and Family Services (DCFS), (2) respondent allowed David to have contact with the minors despite knowing his sex offender status, and (3) respondent's home had structural damage, no running water, exposed plumbing, and construction debris. (We note K.N.'s and B.S.-E.'s fathers were named in the petitions but are not parties to this appeal.)

¶ 7            In April 2019, the trial court adjudicated K.N. and B.S.-E. neglected. Thereafter, the court entered a dispositional order finding respondent unfit, unable, and unwilling to care for K.N. and B.S.-E. and made the minors wards of the court.

¶ 8                                    2. *T.S.-E. and A.S.*

¶ 9            In June 2020, the State filed separate petitions for adjudication of wardship of T.S.-E. and A.S. The petitions alleged that T.S.-E. and A.S. were neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act (705 ILCS 405/2-3(1)(b) (West 2020)) because their environment was injurious to their welfare based on (1) David's status as an untreated child sex offender, (2) respondent being found unfit in a prior case as to the minors' siblings, and (3) the minors' guardian allowing respondent to have unsupervised contact with the minors. (We note T.S.-E.'s father and A.S.'s potential fathers were named in the petitions but are not parties to this appeal.)

¶ 10           Following an adjudicatory hearing, the trial court entered an order finding T.S.-E. and A.S. were neglected. In December 2021, the court entered a dispositional order finding

respondent unfit and unable to care for T.S.-E. and A.S., made the minors wards of the court, and appointed DCFS as the minors' guardian and custodian.

¶ 11                    B. Petitions for Termination of Parental Rights

¶ 12                         1. *K.N. and B.S.-E.*

¶ 13        In January 2023, the State filed separate amended petitions to terminate the parental rights of respondent as to K.N. and B.S.-E. The State alleged respondent was unfit because she (1) failed to maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare (750 ILCS 50/1(D)(b) (West 2022)), (2) failed to protect the minors from injurious conditions within their environment (750 ILCS 50/1(D)(g) (West 2022)), and (3) failed to make reasonable progress toward the return of the minors within any nine-month period after the neglect adjudication (750 ILCS 50/1(D)(m)(ii) (West 2022)). The relevant periods for the last allegation were June 1, 2020, through March 1, 2021, March 2, 2021, through November 2, 2021, November 3, 2021, through July 3, 2022, and April 1, 2022, through December 6, 2022.

¶ 14                         2. *T.S.-E. and A.S.*

¶ 15        Also in January 2023, the State filed separate amended petitions to terminate the parental rights of respondent as to T.S.-E. and A.S. The State alleged respondent was unfit because she (1) failed to maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare (750 ILCS 50/1(D)(b) (West 2022)), (2) failed to protect the minors from injurious conditions within their environment (750 ILCS 50/1(D)(g) (West 2022)), (3) failed to make reasonable efforts to correct the conditions that were the basis for the minors' removal from the home within any nine-month period after the neglect adjudication (750 ILCS 50/1(D)(m)(i) (West 2022)), and (4) failed to make reasonable progress toward the return of the minors within any nine-month period after the neglect adjudication (750 ILCS 50/1(D)(m)(ii) (West 2022)). The

relevant nine-month periods for the last two allegations were June 15, 2021, through March 15, 2022, and March 6, 2022, through December 6, 2022.

¶ 16                                    C. Status Hearings

¶ 17          In January 2023, the trial court held a status hearing. The court confirmed that the termination hearing was set for March 8, 2023. Respondent, who was physically present, informed the court she had a court date in Arkansas on March 6 and was unsure if she could return to Illinois by March 8. The State responded that many parties were involved in the case and all of them were available on March 8. The court inquired of respondent's counsel, "[I]f you could follow up with your client on working with her on that court date. If there's something that absolutely is problematic, we'll address it, okay."

¶ 18          The trial court conducted another status hearing in February 2023. The court asked respondent whether she could be present at the March 8 termination hearing. Respondent told the court, "I have a court date on the sixth that it [*sic*] should be resolved by then." She confirmed she would return to Illinois by March 8. At the State's request, the court admonished all parties, "[I]f you don't appear in court that day, that will be March 8th at nine a.m. for hearing, the hearing will proceed without your presence, okay." Respondent acknowledged that she understood the court's admonition.

¶ 19                         D. Fitness and Best Interest Hearings

¶ 20          In March 2023, the trial court conducted fitness and best interest hearings in all four minors' cases. Respondent appeared by Zoom, as she was in the custody of Crawford County, Arkansas. (One of the fathers also appeared by Zoom.)

¶ 21                                    1. *Motion to Continue*

¶ 22 The trial court first addressed respondent's motion to continue, which was filed the day before the termination hearing. In her motion, respondent notified the court that she was unexpectedly sentenced to 120 days in the Crawford County jail. Respondent's counsel noted she was not opposed to respondent appearing on Zoom for the termination hearing. Rather, counsel believed more time was needed to prepare respondent to appear remotely, such as sharing exhibits, and to ensure proper safeguards were in place for a Zoom evidentiary hearing. Counsel also expressed concern regarding her ability to privately confer with respondent during the termination hearing, as respondent had no access to a cell phone.

¶ 23 In response, the trial court addressed respondent's situation in the Crawford County jail. The court verified that only correctional officers would be present in the room with respondent. The court also confirmed that no one could hear the Zoom audio outside the room, and that respondent could remain in the room for the entire day. When asked by the court, respondent stated she could hear everyone speaking and agreed to raise her hand if her audio was disrupted.

¶ 24 The State opposed the motion to continue. The State pointed out that respondent was told before she left for Arkansas that the termination hearing would proceed with or without her presence. Additionally, the State noted that all evidence relevant to respondent was made available to her in advance of the hearing. The guardian *ad litem* agreed with the State's position.

¶ 25 The trial court denied respondent's motion. After citing several cases it reviewed before the hearing, the court balanced respondent's right to be present against several factors, including the best interest of the minors. In doing so, the court noted the proceedings had been pending for years, and several continuances had already been granted. The court clarified that

given the last-minute circumstances of respondent, the court would allow respondent to attend the hearing by Zoom pursuant to Illinois Supreme Court Rule 45 (eff. Jan. 1, 2023).

¶ 26 The trial court also reviewed the safeguards put in place to preserve the confidentiality of the proceedings. The court admonished all parties not to confer with anyone while on Zoom or allow anyone in the room with them during the hearing. Further, the court explained frequent breaks would be permitted as needed to allow the parties to confer with their attorneys. As to the possibility of technical difficulties, the court stated the hearing could be rescheduled if technical issues disrupted the proceedings. Additionally, the court instructed the remote parties to raise their hand if they wished to speak with their attorneys.

¶ 27 2. *Fitness Hearing*

¶ 28 Upon the State's request and over respondent's objection, the trial court took judicial notice of a list of documents from the court record in each case, including service plans, permanency reports, and permanency orders.

¶ 29 Rachel Williams, a DCFS caseworker, testified that she was initially assigned to the minors' cases in November 2018 and was reassigned to the cases in June 2022. Williams testified respondent engaged in the recommended services, but "mental health services are an ongoing need." Specifically, respondent refused to admit David and her brother had sexually abused two of the minors. Moreover, respondent continued relationships with registered sex offenders.

¶ 30 Williams further testified that respondent failed to maintain regular visitation with the minors. Respondent's visitation with two of the minors was suspended around August or September 2020 after the minors displayed sexually reactive behavior following parent-child visits. Respondent also left Illinois from January 2022 to May 2022, and she discontinued video

visits with the other minors shortly thereafter. Williams opined that although respondent participated in parenting and mental health services, she failed to demonstrate any growth from the services or make any necessary lifestyle changes to facilitate the return of the minors to her care.

¶ 31    Respondent requested the trial court take judicial notice of previous testimony and permanency reviews from respondent's counselor but otherwise presented no evidence. Following the arguments of the parties, the court found respondent unfit by clear and convincing evidence as to all counts alleged by the State.

¶ 32                                    3. *Best Interest Hearing*

¶ 33    Thereafter, the trial court immediately proceeded to the best interest hearing.

¶ 34    Heather Teteak-Berg, a therapist for children, testified that A.S. loved her foster family and had developed a strong emotional attachment to the family. Teteak-Berg stated the foster family wished to adopt A.S. Williams then testified the other three minors indicated they felt safe and loved in their foster home. The foster parents informed Williams of their willingness to adopt the minors.

¶ 35    The trial court found termination of respondent's parental rights was in the best interest of all four minors.

¶ 36    This appeal followed.

¶ 37                                    II. ANALYSIS

¶ 38    We first address the delay in the issuance of this order. As a matter addressing the custody of minors, this case is subject to expedited disposition under Illinois Supreme Court Rule 311(a)(5) (eff. July 1, 2018), requiring the appellate court to issue its decision within 150 days after the filing of a notice of appeal, except for good cause shown. The notice of appeal was filed

on April 5, 2023, making our decision due by September 4, 2023. Respondent's brief was not filed until September 1, 2023. This case was not ready for review by this panel until it was placed on the October 2, 2023, docket. As such, we find good cause exists for the delay in rendering our decision.

¶ 39        Turning to the merits, respondent does not challenge the trial court's findings at the fitness and best interest hearings. Instead, respondent contends that the court violated her right to due process by denying her request to continue the termination hearing. We disagree and affirm.

¶ 40                              A. Standard of Review

¶ 41        The parties disagree as to the appropriate standard of review. Respondent argues we should apply a *de novo* standard. The State responds that the standard of review should be whether the trial court abused its discretion.

¶ 42        " 'The sole question relating to the denial of [a] motion for a continuance is whether or not the trial court erred in its exercise of judicial discretion. Due process is in no [way] involved.' " *In re S.B.*, 2015 IL App (4th) 150260, ¶ 21 (quoting *Benton v. Marr*, 364 Ill. 628, 630 (1936)). An order denying a continuance will not be disturbed absent an abuse of discretion. *In re Tashika F.*, 333 Ill. App. 3d 165, 169 (2002). Further, reversal is not warranted unless the denial of a continuance prejudiced the complaining party. *In re K.O.*, 336 Ill. App. 3d 98, 104 (2002).

¶ 43        We recognize that respondent does not argue the trial court abused its discretion in her brief. However, forfeiture "is a limitation on the parties and not the jurisdiction of the courts." *In re Janine M.A.*, 342 Ill. App. 3d 1041, 1045 (2003). As this case involves the liberty interest of a parent in the custody of her children, we will address whether the trial court abused its discretion by denying respondent's motion to continue. See *In re Charles A.*, 367 Ill. App. 3d 800, 802 (2006).

¶ 44                                    B. Continuance

¶ 45            A litigant does not have an absolute right to a continuance. *In re D.P.*, 327 Ill. App. 3d 153, 158 (2001). Our legislature has recognized that "serious delay in the adjudication of abuse, neglect, or dependency cases can cause grave harm to the minor and the family and that it frustrates the health, safety and best interests of the minor and the effort to establish permanent homes for children in need." 705 ILCS 405/2-14(a) (West 2022). In cases involving juveniles, "[t]he court may continue the hearing only if the continuance is consistent with the health, safety and best interests of the minor." (Internal quotation marks omitted.) *K.O.*, 336 Ill. App. 3d at 104. The State also has an "overwhelming" interest in expediting juvenile proceedings. *D.P.*, 327 Ill. App. 3d at 161.

¶ 46            Here, the trial court balanced respondent's right to be present in the courtroom against the minors' best interest and their need for permanency. The court noted that the minors' cases had been pending for years, and it had granted several continuances up to that point. This was also not the first time that respondent's travels to Arkansas interrupted the proceedings. The court had already delayed an earlier hearing for respondent when she was unavailable due to her arrest in Arkansas.

¶ 47            Before respondent left for Arkansas, the trial court also warned her that the termination hearing would proceed with or without her presence. See *K.O.*, 336 Ill. App. 3d at 105 ("Although a parent has a right to be present at a hearing to terminate parental rights, it is not mandatory that he or she be present, and the [trial] court is not obligated to wait until he or she chooses to appear."). Upon learning of respondent's 120-day sentence, the court quickly arranged for respondent to appear by Zoom. Respondent was also represented by counsel at the hearing, who was physically present in the courtroom. As such, respondent had the opportunity to be

virtually present, to present evidence, and to cross-examine witnesses. See Ill. S. Ct. R. 45(a)(1) (eff. Jan. 1, 2023) ("[A] remote appearance or court proceeding shall be equivalent to an in-person appearance or court proceeding for all purposes.").

¶ 48　　　　Moreover, the only point respondent offered in support of an in-person hearing was that she could explain to the trial court how she improved the conditions of her home. However, respondent has failed to explain why her remote appearance prevented her from communicating this information to the court. Thus, respondent has not shown she was prejudiced by her remote appearance. Given the minors' need for permanency and the multiple prior delays in the proceedings, it was not an abuse of discretion to deny respondent's motion to continue.

¶ 49　　　　Accordingly, we find the trial court did not abuse its discretion in denying respondent's motion to continue the termination hearing.

¶ 50　　　　　　　　　　　III. CONCLUSION

¶ 51　　　　For the reasons stated, we affirm the trial court's judgment.

¶ 52　　　　Affirmed.