NOTICE
Decision filed 04/06/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250923-U

NO. 5-25-0923

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| *In re* ZARIEA T., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Moultrie County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 22-JA-5 |
| | ) | |
| Reginald H., | ) | Honorable |
| | ) | Jeremy J. Richey, |
| Respondent-Appellant). | ) | Judge, presiding. |

JUSTICE McHANEY delivered the judgment of the court.
Justices Vaughan and Clarke concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's order denying the respondent's motion to continue is affirmed.

¶ 2    The respondent, Reginald H. (Father), appeals the trial court's denial of his motion to continue the hearing to terminate his parental rights. For the following reasons, we affirm.

¶ 3                                      I. BACKGROUND

¶ 4    On May 4, 2022, the State filed a petition, alleging that the minor, Zariea T. (born June 2013) was neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Act). 705 ILCS 405/2-3(1)(b) (West 2020). Two other minors, Jaylynn C. (born October 2019) and Piercalynn C. (born January 2021), were included in the petition. Jaylynn C. and Piercalynn C.

1

had a different father than Zariea T., and as such are not included in this appeal. Information regarding them will thus be limited.

¶ 5    Counts I through IV of the petition alleged that the minor was neglected by her mother, Amber C. (Mother), in that she was in an environment injurious to her welfare because Mother failed to engage in intact family services; was unable to care for the minor due to a mental disease, defect, or substance abuse; exposed the minor to inadequate supervision; and the environment exposed the minor to filthy and unsafe living conditions. Count V alleged that the minor's environment was injurious to her welfare in that she resided with Father, and doing so exposed the minor to the criminal activity of Father, namely possession of methamphetamine, domestic battery, unlawful possession of a weapon by a felon, and burglary. As Mother is not a party to this appeal, the facts will be limited to Father's involvement in the case.

¶ 6    A shelter care report from the Illinois Department of Children and Family Services (DCFS) was attached to the petition. The report included that DCFS received two hotline reports regarding Mother. The first report on May 2, 2022, stated that a Moultrie County sheriff's deputy responded to a Dollar General in Lovington, Illinois, where the deputy located the minor who had been in the store for over an hour unsupervised. When the deputy returned the minor home, Mother stated that she did not know where the minor was. The deputy noted that Mother's apartment was in "disarray" when he returned the minor. The second report, made the same day, stated that the reporter observed Mother smoking methamphetamines in the home three to four nights prior, while the minors were sleeping. Further, the home was observed to be "disgusting," with the minor's younger sisters, aged one and two years old, walking around in full diapers and food, dirt, and trash on the floor. The report also stated that a man was staying in the home, selling Mother drugs and using methamphetamines. All three of the minors were taken into protective custody and

2

received medical care after Mother tested positive for amphetamines and methamphetamines on May 3, 2022.

¶ 7    The trial court conducted a shelter care hearing on May 5, 2022. The trial court entered a temporary custody order the same day. The court found probable cause for the petition, that there was an immediate and urgent necessity to remove the minor, and that good cause had been shown why reasonable efforts could not prevent or eliminate the necessity for removal. The court placed the minor in the temporary custody of DCFS.

¶ 8    The trial court held an adjudicatory hearing on August 12, 2022. During the hearing, Mother stipulated to count III of the petition, that the minor's environment was injurious to her welfare in that she resided with Mother and the environment exposed the minor to inadequate supervision. Father waived his right to the adjudicatory hearing. The minor was adjudicated neglected.

¶ 9    DCFS filed a dispositional report on September 8, 2022. Father had completed an integrated assessment and was recommended drug screening, individual mental health counseling, parenting education, family therapy with the minor, and to comply with his parole requirements.

¶ 10    The trial court held a dispositional hearing on September 13, 2022, and entered a written order the same day. The dispositional order found Father to be unable and unwilling, for reasons other than financial circumstances alone, to care for, protect, educate, supervise, or discipline the minor. The order made the minor a ward of the court, placed guardianship and custody of the minor with the Guardianship Administrator of DCFS, and set the permanency goal to return home within 12 months.

¶ 11    DCFS filed a permanency hearing review report on March 1, 2023. The report stated that on September 16, 2022, Father was arrested for domestic battery and was ultimately transferred to

the Graham Correctional Center on January 26, 2023. Prior to his arrest, Father met with DCFS to discuss his service plan. He reported that he completed several service programs during his last incarceration, but did not provide documentation of the completion to DCFS. Father also tested positive for methamphetamine on September 7, 2022. After his arrest, Father was provided information on how to contact DCFS via phone to discuss the progress of the case, but he never called.

¶ 12    The trial court held a permanency review hearing on March 7, 2023, and entered an order the same day. The trial court found that Father had not made reasonable or substantial efforts toward the return of the minor, and had not made reasonable progress in his recommended services.

¶ 13    Father remained incarcerated until January 10, 2024. DCFS continued to file permanency review reports that included the same information about Father's incarceration above. The trial court found that Father did not make reasonable or substantial efforts, or reasonable progress on the following dates: March 7, 2023, May 17, 2023, and October 12, 2023.

¶ 14    After Father's release, DCFS filed a permanency review report on February 27, 2024. At that time, Father had only completed his integrated assessment and had not yet engaged in any services. The report noted that Father's mother, Debbie, was approved to supervise one visit a week for one hour, pending a home safety check. However, Mother was arrested at Father's house on February 5, 2024, and DCFS no longer felt as though home visits would be appropriate.

¶ 15    DCFS filed a permanency review report on April 9, 2024. Father had not yet engaged in any visits with the minor, as he cancelled one, and the second was cancelled due to Father being unconscious. Father had not completed any scheduled drug screens or any other services.

¶ 16    On April 22, 2024, the State filed a motion seeking a finding of unfitness and termination of parental rights. The motion alleged that Father (1) failed to maintain a reasonable degree of

4

interest, concern, or responsibility as to the welfare of the minor; (2) failed to make reasonable efforts during any nine-month period following adjudication, specifically September 13, 2022, to June 13, 2023, and June 13, 2023, to March 13, 2024; (3) failed to make reasonable progress toward the return of the minor during any nine-month period, the same prior alleged dates; and (4) was depraved, based on three or more felony convictions in the state of Illinois, at least within five years of the motion, specifically possession of methamphetamine, unlawful possession of a weapon by a felon, burglary, and domestic battery.

¶ 17    The circuit court held a fitness hearing on February 4, 2025.[1] During the hearing, Father admitted he was depraved based on three or more felony convictions. The State dismissed the remaining counts alleged against him. The State provided certified copies of Father's convictions to the court in support of its factual basis. The court fully admonished Father as to his rights and the bifurcated proceeding on the State's petition to terminate his parental rights. The circuit court entered a written order on February 5, 2025, including that Father admitted and stipulated to unfitness, and found him to be unfit.

¶ 18    DCFS filed a best interest report on April 9, 2025. The report stated that the minor was placed with her paternal grandmother and was doing well. The report recommended that Father's parental rights be terminated and the permanency goal be changed to adoption.

¶ 19    A best interest hearing was held on May 6, 2025. The State called Jenna Kraus, a caseworker with DCFS. Kraus stated that the most recent best interest report was prepared on April 9, 2025, but since then, the minor's placement changed. The minor was previously placed with Father's mother, but she was moved to her maternal grandmother's home. A hotline report was made, stating that Father was living with his mother and the minor. The report further stated that

[1]The fitness hearing was continued multiple times by agreement of the parties.

Father hit the minor and grabbed her by her neck, and that there were guns and knives in the home, causing the minor to be afraid. The minor confirmed in an interview that Father was living with her, there had been at least one physical altercation with him, and that she was afraid of all the guns and knives. Kraus testified that Father was approved for two hours of supervised visits a week, but he was not permitted to have overnight visits and had to request extra visitation time if he wanted to come to the home.

¶ 20 Kraus stated that it was in the best interests of the minor that Father's parental rights be terminated. The minor's maternal grandmother stated she was willing to adopt the minor. On examination from the court, Kraus testified that the minor started a new school the day before the hearing, was making new friends, and was with her family. The minor also told Kraus that she wished to be adopted by her maternal grandmother.

¶ 21 On cross-examination from Father's counsel, Kraus said that, in addition to the minor confirming that Father lived at his mother's house, it was confirmed through the anonymous reporter, community members, and police officers. Kraus confirmed that the minor had some struggles in school, so she had extra tutoring at her previous school and her new school. The minor also previously was engaged in counseling, and a referral was made for treatment in her new town. Kraus testified that Father never completed any services to her knowledge, and he was only employed on and off throughout the case. Kraus stated that the minor had previously spent summers with her maternal grandmother. The parties presented no further witnesses or evidence and proceeded to argument.

¶ 22 The State argued that the minor reported that Father lived with her, and he did not complete any services. As to the minor, the State said that no one knows "at this moment whether the maternal grandmother [was] the best placement option for her." Father was not going to be ready

to take the minor home, and thus it was in the minor's best interest to have Father's rights terminated.

¶ 23     Father's counsel asked the court to deny the motion to terminate his parental rights because the minor had not been in her current placement for long enough to consider permanency there. Father had not completed "[a] lot of the services that were asked of him to complete" because of being on probationary periods with employment.

¶ 24     The guardian *ad litem* (GAL) argued that termination of parental rights was appropriate. The GAL stated that the minor's placement could be determined at an adoption hearing if necessary.

¶ 25     The trial court denied the petition to terminate parental rights due to concerns with the minor's recent placement change. The trial court stated that Father did not have enough stability or ties with the minor, but there also was not stability in the minor's current placement yet. The trial court entered a written order on May 8, 2025, denying the petition and setting a permanency review hearing.

¶ 26     DCFS filed a permanency review report on August 13, 2025. The report stated that the minor was placed with her maternal grandmother and was bonded and attached to her. The minor reported that she was happy and felt safe and loved in her placement. Father had not engaged in any additional services, and was not receiving visits.

¶ 27     The State filed a "Motion to Advance Case to Best Interests Determination" on August 13, 2025. The motion stated that the minor had settled into her placement with her maternal grandmother, and it was no longer in the best interest of the minor that Father's parental rights remain intact.

¶ 28    DCFS filed a best interests report on October 8, 2025. The report stated that the minor was thriving in her placement, was bonded with her grandmother, and was observed to be happy in the home. The minor's medical, emotional, social, and educational needs were being fulfilled. The report recommended that Father's parental rights be terminated and the permanency goal be changed to adoption.

¶ 29    The matter proceeded to a best interest hearing on October 14, 2025.[2] At the beginning of the hearing, Father's counsel stated that Father was not present. Counsel stated that she had not had contact with Father, but that Father was informed of the court date by the caseworker. Counsel made an oral motion to continue the best interests hearing due to Father's absence, which the trial court denied. The trial court stated that it was in the best interests of the minor to continue with the hearing. Additionally, Father was given notice of the hearing, and he did not communicate with his counsel as to why he was not present.

¶ 30    The State then called caseworker Kraus to testify. She stated that the minor was "doing the best she has been in any other placement" with her maternal grandmother. The minor told Kraus that she felt safe and loved, and she wanted her grandmother to adopt her. Kraus testified that she had no concerns about long-term care for the minor with her maternal grandmother.

¶ 31    Father's counsel then cross-examined Kraus. She testified that she prepared both the permanency report and the best interest report for the hearing. Kraus stated that she previously reported that the minor was the happiest she had been in any placement with her paternal grandmother as well. Kraus testified, "[E]verything was fine until [Father] became homeless and moved back into his mom's house." Kraus stated that the minor's paternal grandmother previously

[2]During this hearing, Mother stipulated to the State's petition and agreed that it was in the minor's best interest to terminate her parental rights. The trial court accepted her stipulation and terminated her rights during the hearing as well.

took the minor to all medical appointments and kept up with her medication, but the maternal grandmother now continues that medical care. Kraus testified that the minor previously would become upset when Father would miss visits because she had to travel to see him, and then he would not show. Kraus stated that she was aware Father was employed full-time and he was living with his mother.

¶ 32    On cross-examination from the GAL, Kraus testified that she met with Father the previous week, and he was aware of the best interest hearing. He did not indicate to Kraus any reason that he would not be present. The State presented no further witnesses.

¶ 33    The State argued that it was in the best interest of the minor to terminate Father's parental rights and that the permanency goal be changed to adoption. Mother agreed with the State and asked for Father's parental rights to be terminated and the goal be changed to adoption. The GAL also agreed with the State's recommendation.

¶ 34    Father's counsel argued that Father was bonded with the minor and that she would become upset when she did not get to see him. Father and the minor had "consistent visitation" while she lived with her paternal grandmother, but due to his employment, he was not able to travel for visitation. Counsel stated that other than the present hearing, Father had attended every court date and Father wanted to continue to have a relationship with her.

¶ 35    After considering all the relevant statutory factors, the trial court granted the State's petition to terminate. On October 15, 2025, the court entered a written order terminating Father's parental rights and changing the permanency goal to adoption. Father timely appealed.

¶ 36                                    II. ANALYSIS

¶ 37    On appeal, Father argues that the trial court abused its discretion when it denied the motion for continuance of the termination hearing. We disagree.

9

¶ 38    We review the denial of a motion to continue for an abuse of discretion. *Merchants Bank v. Roberts*, 292 Ill. App. 3d 925, 927 (1997). The trial court has broad discretion when deciding whether to grant or deny a motion to continue, but the court must not exercise that discretion arbitrarily. *Id.* "It is within the juvenile court's discretion whether to grant or deny a continuance motion, and the court's decision will not be disturbed absent manifest abuse or palpable injustice." *In re K.O.*, 336 Ill. App. 3d 98, 104 (2002). A litigant does not have an absolute right to a continuance. *Id.* The denial of a request for continuance is not grounds for reversal unless the complaining party has been prejudiced by such denial. *In re M.R.*, 305 Ill. App. 3d 1083, 1086 (1999).

¶ 39    The Act states, "The legislature recognizes that serious delay in the adjudication of abuse, neglect, or dependency cases can cause grave harm to the minor and the family and that it frustrates the health, safety and best interests of the minor and the effort to establish permanent homes for children in need." 705 ILCS 405/2-14(a) (West 2024). In juvenile cases, the court may continue a hearing "only if the continuance is consistent with the health, safety and best interests of the minor." *Id.* § 2-14(c). The Act also states that the party should file a motion to continue no later than 10 days prior to the hearing, or upon the court's own motion and only for good cause. *Id.* The term "good cause" as applied to the Act is strictly construed and must be in accordance with Illinois Supreme Court Rule 231(a) through (f). *Id.*; Ill. S. Ct. R. 231(a)-(f) (eff. Jan. 1, 1970).

¶ 40    In the present case, the motion to continue was not filed at least 10 days prior to the hearing as required, but instead given orally immediately prior to the hearing. 705 ILCS 405/2-14(c) (West 2024). Father's counsel was present and available to cross-examine the witnesses during the best interest hearing. Counsel cross-examined the witnesses and had the opportunity to contest any of

10

the evidence or testimony presented. As such, Father failed to prove that he suffered any prejudice as a result of the denial of the motion to continue.

¶ 41    In considering the motion to continue, the trial court had to consider the health, safety, and best interests of the minor. *Id*. The minor had been in the care of DCFS since May 2022, over three years by the time of the hearing. The trial court also considered the fact that Father received notice of the hearing, but failed to appear. We find that the trial court did not abuse its discretion in denying the motion to continue.

¶ 42    Father does not argue that the trial court erred in finding him unfit or terminating his parental rights. As such, these issues are deemed forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (points not argued are forfeited).

¶ 43                                  III. CONCLUSION

¶ 44    For the foregoing reasons, the October 15, 2025, judgment of the circuit court of Moultrie County that terminated Father's parental rights to the minor is hereby affirmed.


¶ 45    Affirmed.

11